**UNITED STATES v. ONE 1941 PONTIAC SEDAN.**

**UNITED STATES v. ONE 1941 DODGE SEDAN.**

United States District Court
S. D. New York.

Dec. 14, 1948.

John F. X. McGohey, United States Attorney for the Southern District of New York, New York City, proctor for libellant (Harold J. Raby, Assistant United States Attorney, New York City, of counsel).

Henry K. Chapman, New York City, proctor for Claimants.

LEIBELL, District Judge.

The above actions to forfeit two automobiles, alleged to have been used by John G. Ardito in facilitating the sale of contraband (narcotic drugs) were by agreement consolidated for trial. The main facts in relation to each action have been set forth separately in findings of fact which are being filed together with this memorandum. Ardito was a seller of narcotics and he was convicted in this Court, on a plea of guilty of having made an illegal sale of narcotics consummated April 30, 1946.

On November 29, 1946 the government filed the libels against the two automobiles seeking their forfeiture under 49 U.S.C.A. § 782. Michael Cestaro filed a claim to the Pontiac sedan on December 2, 1946, alleging that he is the owner thereof. Carmine Criscuolo on the same day filed a claim to the Dodge sedan, as the alleged owner thereof. The Pontiac is registered in the name of Anna Ardito, but the Government does not dispute Cestaro's contention that he is the actual owner. Ardito's use of the Pontiac, as hereinafter described, was with the consent of Cestaro, and his use of the Dodge was with the consent of Criscuolo.

The pertinent provisions of Chapter 11 of Title 49 of the United States Code Annotated are the following:

"§ 781. Unlawful use of vessels, vehicles, and aircrafts; contraband article defined

"(a) It shall be unlawful (1) to transport, carry, or convey any contraband article in, upon, or by means of any vessel, vehicle, or aircraft; (2) to conceal or possess any contraband article in or upon

any vessel, vehicle, or aircraft, or upon the person of anyone in or upon any vessel, vehicle, or aircraft; or (3) to use any vessel, vehicle, or aircraft to facilitate the transportation, carriage, conveyance, concealment, receipt, possession, purchase, sale, barter, exchange, or giving away of any contraband article.

"(b) As used in this section, the term 'contraband article' means—

"(1) Any narcotic drug which has been or is possessed with intent to sell or offer for sale in violation of any laws or regulations of the United States dealing therewith, or which is sold or offered for sale in violation thereof, or which does not bear appropriate tax-paid internal-revenue stamps as required by law or regulations;

\*   \*   \*   \*   \*.   \*

"§ 782.   Seizure and forfeiture

"Any vessel, vehicle, or aircraft which has been or is being used in violation of any provision of section 781, or in, upon, or by means of which any violation of section 781 has taken or is taking place, shall be seized and forfeited:

\*   \*   \*   \*   \*   \*

"§ 784.   Application of related laws

"All provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of vessels and vehicles for violation of the customs laws; the disposition of such vessels and vehicles or the proceeds from the sale thereof; the remission or mitigation of such forfeitures; and the compromise of claims and the award of compensation to informers in respect of such forfeitures shall apply to seizures and forfeitures incurred, or alleged to have been incurred, under the provisions of this chapter, insofar as applicable and not inconsistent with the provisions hereof: \* \* \* "

■   The word "facilitate", as used in § 781(a) (3) and applied to the facts as found in this case, means that the automobile was used to make easy, to promote; to help forward the purchase and sale of the heroin. See Webster's Universal Dictionary (1913) and the Concise Oxford Dictionary (1944). Facilitation has also been defined in several decided cases. Pon Wing Quong v. United States, 9 Cir., 111 F.2d 751; United States of America v. One Dodge Coupe, D.C., 43 F.Supp. 60; Platt v. United States, 10 Cir., 163 F.2d 165. An automobile used as an armed convoy for other vehicles loaded with smuggled liquors was held to violate a section of the internal revenue statutes, 26 U.S.C.A. § 3321, relating to the forfeiture of vehicles used in the removal or for the deposit or concealment of intoxicating liquors with intent to defraud the government of the tax. The automobile was forfeited because it "was the armed convoy, or pilot and guard, of the others, but itself contained none of said liquors." United States v. One Dodge Sedan, D.C., 28 F.2d 44, 45.

■   Statutes relating to frauds on the revenue, although they impose a penalty or forfeiture "are to be fairly and reasonably construed, so as to carry out the intention of the legislature." They "are construed less narrowly" than penal statutes and others involving forfeitures. United States v. Stowell, 133 U.S. 1, at page 12, 10 S.Ct. 244, at page 246, 33 L.Ed. 555; United States v. Ryan, 284 U.S. 167, at page 172, 52 S.Ct. 65, 67, 76 L.Ed. 224.

■   The statute, 49 U.S.C.A. § 781 et seq., which became a law August 9, 1939, was intended to have an expanded meaning. United States v. Pacific Finance Corp., 2 Cir., 110 F.2d 732. A comparison of clause (3) of subdivision (a) of § 781 with clause (1) thereof makes it clear that clause (3) was intended to embrace situations other than the actual transportation of the contraband in a vehicle. Clause (3) includes the use of a vehicle to facilitate the transportation of the contraband—something other than the actual transportation of the contraband. Indeed, clause (3) goes even further and includes the use of a vehicle to facilitate the purchase or sale of the contraband.

The purpose of Congress in enacting the statute appears from the following extracts from the report of the Ways and Means Committee of the House of Representatives (Report No. 1054 of the 76th Congress, 1st Session) submitted on H.R. 6556:

"It has been the experience of our enforcement officers that the best way to strike at commercialized crime is through

the pocketbooks of the criminals who engage in it. By decreasing the profits which make illicit activity of this type possible, crime itself can also be decreased. Vessels, vehicles, and aircraft may be termed 'the operating tools' of dope peddlers, counterfeiters, and gangsters. They represent tangible major capital investments to criminals whose liquid assets, if any, are frequently not accessible to the Government.

\*　　\*　　\*　　\*　　\*　　\*

"Special attention is called to the fact that the bill affords the same remedy for remission and mitigation of forfeiture to innocent owners (as well as innocent lienors and mortgagees) of seized vessels, vehicles, and aircraft as is now afforded them under the customs laws and that these customs provisions have been in effect ever since 1790 (act of May 26, 1890 [1790], 1 Stat. 122). In this connection it is pertinent to mention that Congress since the very beginning of our Government has (in enacting forfeiture statutes directed against means of transportation used to facilitate violations of law) proceeded on the principle that the carrier, i. e., the vessel or vehicle, is the primary offender and if unlawfully used may be subjected to forfeiture irrespective of the innocence of the owners. Vessels and vehicles of innocent owners have been subject to forfeiture under the customs laws since the first Customs Administrative Act of July 31, 1789 [1 Stat. 29]. In Goldsmith-Grant Co. v. United States ((1921) 254 U.S. 505 [41 S.Ct. 189, 65 L.Ed. 376]) the Supreme Court of the United States in affirming a judgment of forefeiture against an automobile employed in the transportation of un-tax-paid liquor, notwithstanding the innocence of the conditional vendor of the vehicle, said ([254 U.S. at] p. 510 [41 S.Ct. at page 191]):

" 'In breaches of revenue provisions, some forms of property are facilities, and therefore it may be said, that Congress interposes the care and responsibility of their owners, in aid of the prohibitions of the law and its punitive provisions, by ascribing to the property a certain personality, a power of complicity and guilt in the wrong !' "

▮ If an automobile is used by a drug peddler as a "means" of going to places to negotiate sales of narcotics and as a means of driving therefrom, to later on have the orders filled, and as a means for the joint transportation of himself and a confederate, who makes the delivery of the narcotics for the peddler, the automobile is in my opinion being used to facilitate the sale of narcotics, even though narcotics are not actually carried in the car. That was the use made by Ardito of the 1941 Pontiac sedan (Motor No. 6816302). The proof is that Ardito used that car to drive to McGinness' Bar on April 8th, where he had a conversation with a government informer (Sonnessa) who arranged to buy some narcotics the following day. On April 9th, Ardito was seen getting out of the Pontiac on Morris Avenue in the vicinity of 168th and 169th Streets, Bronx, where the narcotics were to be delivered. There the informer told Ardito that he had lost the purchase price of the narcotics in a crap game. A third party, Princiotta, was seen approaching with a brown paper bag from a point nearby and Ardito waved him away and the sale was not consummated. It is a fair inference that Ardito had come to the place on Morris Avenue in the Pontiac to consummate the narcotic sale. The Pontiac was stationary when it was observed, but Ardito was seen leaving it. Ardito lived on Second Avenue at about 112th Street. Thus, the Pontiac was used to bring Ardito to the McGinness' Bar at 48th Street and Broadway on April 8th to negotiate the deal for the sale of the narcotics and it was used also to bring him to the vicinity of 168th Street and Morris Avenue the following day April 9th, where delivery of the narcotics was to be made. The fact that the sale was not actually concluded does not affect the purpose for which the car was being used by Ardito. He was ready to go through with the sale. It was the informer who failed because he did not have the price. Ardito was using the Pontiac in conducting his business as a dope peddler.

On April 17th Princiotta was involved in a sale to the informer of narcotics (highly adulterated heroin) for $250.00. That transaction took place in the afternoon on Cortlandt Street, Manhattan, near the Hudson River Tubes. Princiotta and Ar-

dito were seen together uptown that morning and again that evening. Ardito used the Pontiac in meeting Princiotta on the evening of April 17th. On the afternoon of April 17th the car used by Princiotta was a 1936 Dodge, in which Princiotta had also driven when he carried the brown paper bag on April 9th near 168th Street and Morris Avenue, Bronx. Princiotta also used the 1936 Dodge in making the delivery on the April 29–30 transaction, which will be next discussed.

It was the same informer (Sonn'essa) who paid $350.00 to Ardito at McGinness' Bar on April 29th. On that occasion Ardito was using a 1941 Dodge. Princiotta delivered the narcotics to the informer the following day April 30th. If an automobile is used by a drug peddler to drive to a place where he negotiates a deal for the sale of narcotics to be delivered at a later date, and having received an advance payment of the purchase price during the negotiations if he returns to the automobile with the purchase price in his pocket and drives off, that, in my opinion, would subject the vehicle to seizure and forfeiture, because it was being used to facilitate the sale of the contraband, narcotics. The 1941 Dodge Sedan (Motor No. D19-185101, Serial No. 30,525,681) was thus used by Ardito on April 29th and should be forfeited.

Princiotta was involved in all three deals for the sale of narcotics to this informer. Princiotta made the April 17th deal with the informer in which Ardito did not appear, at least openly. But in the month of April Ardito and Princiotta were seen on one occasion riding together in the 1941 Pontiac and they were also seen near the parked Pontiac on four or five occasions. It is a fair inference that the 1941 Pontiac sedan was a useful means by which they carried on their illicit drug traffic. On and after April 29th Ardito used the 1941 Dodge. He drove it when he got the $350.00 on April 29th. Although Ardito was seen driving the 1941 Dodge on April 30th, neither Ardito nor his automobiles was seen on April 30th at the time Princiotta delivered the narcotics to the informer.

It might be here observed that after the arrests of Ardito and Princiotta the 1936 Dodge was seized and later sold at auction. The 1936 Dodge had been used by Princiotta to transport the narcotics on April 17th and April 30th. It was also used by him April 9th when he was about to make delivery of a brown paper bag, but was waved off by Ardito. The older and cheaper car was used by the confederate to actually transport the narcotics. Ardito used the more expensive cars himself and did not risk having the narcotics found in them.

That an automobile is a form of property which is a facility for the illicit traffic in narcotics is evident from the facts in this case. The automobile enables the dope seller to make himself more elusive in travelling to places where he meets his customers or his confederates. It is more difficult to trail the law violator if he uses an automobile. He can travel greater distances, follow less frequented streets or roads, move about at will and alone, and be completely independent of public means of conveyance. The automobile helps him escape observation, detection and capture. It is an operating tool of the dope peddler's trade.

Where it has been shown by the evidence that the dope peddler has used the automobile to carry on his illicit traffic, the automobile is subject to seizure and forfeiture. The automobile need not be used in the actual transportation of the narcotics in order to be subject to seizure and forfeiture. The case of United States v. One Dodge Coupe, D.C., 43 F.Supp. 60, discussed the statute and the meaning of its terms, and applied the statute to the use of an automobile by a dope peddler. Platt v. United States, 10 Cir., 163 F.2d 165, 167, did not involve an automobile of a dope peddler. An unfortunate woman, a drug addict, had used her mother's automobile to go to the drug store in town, where she had a forged prescription for narcotics filled by the druggist. As she was leaving the drug store with the narcotics she was arrested. The appellate court held that the use of the automobile "enabled her to get to the store more quickly than if she had walked or had used a slower means of transportation."

Findings of fact and conclusions of law are being filed herewith.

The Government will be granted a decree of forfeiture in both these cases involving the 1941 Pontiac Sedan and the 1941 Dodge Sedan.