## UNITED STATES v. ONE 1949 FORD SEDAN, etc.

### Civ. No. 735.

United States District Court
W. D. North Carolina.

March 30, 1951.

T. A. Uzzell, Jr., U. S. Atty., Asheville, N. C., and J. B. Craven, Jr., Asst. U. S. Atty., Morganton, N. C., for the United States.

Joseph C. Travis, Charlotte, N. C., Max L. Childers, Mount Holly, N. C., and Shannonhouse, Bell & Horn, Charlotte, N. C., for defendant.

WARLICK, District Judge.

This is a proceeding by the United States of America for adjudgment of forfeiture of a 1949 Ford Sedan automobile, under Sections 781–782 of Title 49 U.S. C.A., on the alleged grounds that it had been unlawfully used to *facilitate* the transportation, sale, barter, etc. of narcotics. The libel of information was filed on December 19, 1949, in the office of the Clerk at Charlotte, North Carolina. In due time separate answers to the libel were filed by claimants, Eulis "Dock" Overman, Robert F. Wyatt, and the Wachovia Bank and Trust Company; on the hearing the following facts are found and the conclusions of law are stated, with decree carrying into effect the judgment to be entered.

On October 11, 1949, Eulis Overman purchased the 1949 Ford Sedan involved herein from the Taylor Motors Company in

Mount Holly, North Carolina, paying approximately $2,400 therefor, and executing a purchase money mortgage or conditional sales agreement to the seller for the unpaid balance of $1,453.20. On the same date this contract was endorsed on being sold for value by the Motors Company to the Wachovia Bank and Trust Company of Charlotte, North Carolina, and it became the owner thereof.

On November 8, 1949, the above Ford automobile was traded by Eulis Overman to Robert F. Wyatt, Overman receiving in exchange therefor a Mercury automobile and the purchaser, Wyatt, assumed the payment of the unpaid balance to the Wachovia Bank and Trust Company and was accepted as the obligor by the Trust Company at said time.

On December 19, 1949, the United States Government filed its libel against the above set out Ford Sedan, alleging therein that on the 26th of October, 1949, one Howard Overman used the said automobile in the conveyance and transportation of narcotics in violation of Title 49 U.S.C.A. § 781 et seq. The date of the actual seizure of the said automobile in the hands of Wyatt being alleged as November 28, 1949.

From stipulations made by counsel of record additional facts are found by the court.

On October 26, 1949, narcotic agent, George M. Belk, pursuant to an agreement with Howard Hugh Overman, paid to him on his front porch in Lowell, North Carolina, $200 for the purchase of narcotic drugs, Belk and Overman agreeing that they would meet later at the Woodlawn Post Office in Lowell and take delivery of the contraband narcotic drugs. That immediately following the transaction set out above, Howard Hugh Overman being in possession of $200 in purchase money, left his home and drove away in the automobile against which the libel is filed, "Some short time later" driving past Woodlawn Post Office in said automobile.

"Sometime thereafter" Howard Hugh Overman returned to the Woodlawn Post Office in another and different automobile and one not the subject of this libel, and delivered from that automobile the contraband narcotic drugs in line with the purchase set out above.

Eulis "Dock" Overman, who originally purchased the Ford Sedan against which the libel is filed is a man of good character and bears a fine reputation in the community in which he lives. He has no criminal record in any court, works regularly at an honest calling, and has been employed with the same company for longer than fifteen years.

Robert F. Wyatt, the subsequent purchaser of the automobile from Eulis Overman is likewise a man of good character and bears such reputation and has no criminal record.

Howard Overman for some months had been engaged in the narcotic traffic and had effected connections with certain individuals higher up in the narcotic field and had done considerable peddling of narcotics.

Dock Overman was unaware of any transactions of this kind and the stipulation entered into states "That Dock Overman had no knowledge of his, Howard Hugh Overman, ever engaging in narcotic activities", the car being loaned by Eulis "Dock" Overman to his brother, Howard Hugh Overman, on the morning of October 26th, so that he might go to his home and return in a short while. Both lived in Lowell, a textile village.

That no narcotics of any kind were ever conveyed, concealed, transported or otherwise found in or about the Ford automobile against which the libel is filed.

The question to be determined is this: "Was the car sought to be confiscated used to *facilitate* the transportation, purchase, etc. of narcotics as is found under subsection (a)(3) of Sec. 781, Title 49 U.S.C.A.

The pertinent provisions of Chapter 11 of Title 49 of the United States Code Annotated are the following:

"§ 781. Unlawful use of vessels, vehicles, and aircrafts; contraband article define

"(a) It shall be unlawful (1) to transport, carry, or convey any contraband article in, upon, or by means of any vessel, vehicle, or aircraft; (2) to conceal or possess any contraband article in or upon any vessel,

vehicle, or aircraft, or upon the person of anyone in or upon any vessel, vehicle, or aircraft; or (3) to use any vessel, vehicle, or aircraft to facilitate the transportation, carriage, conveyance, concealment, receipt, possession, purchase, sale, barter, exchange, or giving away of any contraband article." U. S. v. One 1941 Pontiac Sedan, D.C., 83 F.Supp. 999.

■ As used in this section the term contraband article must embrace any narcotic drug and does embrace the narcotic drugs actually sold and delivered,—ten tubes containing 50 grains of morphine, to which receptacles had not been attached appropriate tax paid internal revenue stamps as required by law and regulation.

Since it is one among the facts found that the automobile was not engaged in the actual transportation of the narcotic drugs or the concealment thereof as is embraced in Subsec. (a)(1) and (2) of Sec. 781, we are then compelled to seek an answer to the question under Subsec. (a)(3) and that brings us to the determination of whether or not this vehicle was used to facilitate the transportation, etc. as was above set out. The answer to this question is somewhat difficult, and must be determined wholly from the facts constituting the evidence in the case. This evidence comes about from admissions in the pleadings properly offered, and from the stipulations entered into by counsel.

The word "facilitate" is one of common use in business and transactions between ordinary persons. It is a term of everyday use with a well considered and accepted meaning. Webster defines "facilitate" as meaning: "to make easy or less difficult; to free from difficulty or impediment; as to facilitate the exercise of a task; to lessen the labor of; to assist * * * Funk and Wagnall's New Standard Dictionary defines "facilitate" as follows: "to make more or less difficult; free more or less completely from obstruction or hindrance; lessen the labor of." Platt v. United States 10 Cir., 163 F.2d 165.

Those definitions are all embracing and still leave you with the common accepted thought of the word facilitate as used in everyday language among English speaking people. The word appears in many Federal Statutes. It seems in none to have been defined, but one would presume that it was used by the Congress in its ordinary accepted meaning.

It is not disputed that Howard Hugh Overman had borrowed the automobile in question from his brother on the morning when it was parked in the roadway in front of his house, and at the time when the agreement was made to deliver the narcotics to the government agent, Mr. Belk. Neither is it in dispute that shortly thereafter Howard Hugh Overman left his home in the automobile and that in so travelling he passed the post office. Where he went thereafter, how long he was gone, whom he contacted, what transpired, are all matters of conjecture. The stipulation prescribes "sometime thereafter the said Howard Hugh Overman returned to the post office and made the delivery."

■ Unfortunately for the record, Howard Hugh Overman was imprisoned for a long term by the undersigned Judge and was not available so that evidence could be given by him. The most that can be said about the vehicle sought to be confiscated was that it was used by Overman after having been in contact with the narcotic agent to leave his home. Thereafter its connection is as silent as unuttered words. No one speaks with respect to its connection from that time. Statutes which undertake to confiscate the property belonging to an innocent third party must of necessity be construed strictly, yet fairly and reasonably, all to the end that no one be deprived of his property except by the law of the land.

The statute under which this libel is filed seems to have been construed in only one instance in the Court of Appeals. Platt v. United States, 10 Cir., 163 F.2d 165, 167. The condemnation there was sought against a vehicle owned by the Mother and driven by her daughter who was a dope addict. She lived with her Mother. The daughter had been obtaining drugs presumably on questionable doctor's prescriptions. On the occasion in question she asked her

Mother for the use or her automobile. Her request was granted. A similar request had been granted on a few other occasions. She drove to the drug store in the automobile, and after parking the car and entering the drug store obtained certain morphine tablets on a false prescription. Leaving the drug store she was arrested. The drugs were seized. The Mother knew she was a drug addict but did not know that she had in mind securing drugs when she asked for the use of the car. Under such evidence the Court of Appeals for the Tenth Circuit held that the automobile was not used to facilitate a violation of the law and used as its reasoning these words: "The crime charged here was the illegal purchase of narcotics. The use of the automobile did not make the accomplishment of the purchase more easy or free it from obstruction or hindrance, or make the sale any less difficult. It was merely the means of locomotion by which Blanche Cooper went to the store to make the purchase. Its use enabled her to get to the store more quickly than if she had walked or had used a slower means of transportation. But the argument that this facilitated the purchase disregards the ordinary and accepted meaning of the word when applied to the sale."

The other citations called to the Court's attention are cases of similar import but have to do with the confiscation of vehicles owned by the parties engaged in transportation, sale, etc., and from which the articles were either taken or had been conveyed to the place of delivery. It would, therefore, seem that the reasoning of the court in each instance was more or less bottomed on the fact that they were dealing with one actually engaged in the violation of the law. United States v. One 1941 Pontiac Sedan, D.C., 83 F.Supp. 999. United States v. One Dodge Coupe, D.C., 43 F.Supp. 60.

Can it be said that the plaintiff should be entitled to confiscate a vehicle belonging to another on grounds no greater than that embraced in the findings of fact herein and thereupon deprive an innocent person of his property lawfully acquired? The answer is No. To hold that its use

facilitated the transportation, etc., is to add to the record facts not found therein,—is to surmise rather than to know,—is to guess rather than to be definite, and amounts to the taking from, rather than the addition to, Man's respect for the fairness of the law. The government's glove does not fit the hand on which it is sought to be placed.

I therefore conclude that the automobile undertaken to be confiscated by the government is not so liable, and that a decree of forfeiture should not be granted.