UNITED STATES of America

v.

ONE 1950 BUICK SEDAN Serial No. 56272505, Motor No. 64643675, Registered to Rosetta Brown and Juanita Young, and lately possessed by Thomas Gaskins.

No. 50 of 1953.

United States District Court
E. D. Pennsylvania.
April 26, 1955.

W. Wilson White, U. S. Atty., Eugene J. Bradley, Asst. U. S. Atty., Philadelphia, Pa., for libellant.

Samuel Kagle, Philadelphia, Pa., for claimants.

CLARY, District Judge.

This is a case in which the United States of America instituted proceedings for the forfeiture of one 1950 Buick Sedan automobile, Serial No. 56272505, Motor No. 64643675, alleged to have been used in violation of 49 U.S.C. § 781. The automobile owned by the claimants, Rosetta Brown and Juanita Young, was alleged to have been used by one Thomas Gaskins on April 6, 1952 to facilitate the purchase and sale of a narcotic drug, to wit: heroin. The automobile was seized by the Government from the possession of the claimants on March 18, 1953, almost one year later. Admittedly, neither claimant was involved in the offense charged. The testimony in the case which was heard by the Court, without a jury, on February 21, 1955, establishes the following:

Rudolph P. Crouch, a Federal Narcotics Agent, together with a special employee of the Narcotics Bureau, presumably an undercover informant, were standing on the street corner at the intersection of 19th and South Streets, in the City of Philadelphia, at about 2 o'clock P.M. on April 6, 1952. One Thomas Gaskins, driving the automobile in question, arrived at the intersection and stopped for a traffic light. The special employee called to Gaskins, who drove the automobile to the curb and parked it. Agent Crouch and the special employee then entered the car and engaged in conversa-

tion with Gaskins. The special employee introduced Crouch to Gaskins. Crouch then asked Gaskins whether he could supply him with one-sixteenth of an ounce of heroin. Gaskins, admittedly a narcotics dealer, agreed to supply the requested drug and demanded payment of $20 in advance as its purchase price. Gaskins further told Crouch that he, Gaskins, would have to go and get the heroin and instructed Crouch to meet him in fifteen or twenty minutes in a tavern a few blocks distant, located at the corner of 17th and Kater Streets in the City of Philadelphia. Gaskins then drove off in the car. Crouch and the special employee walked to the tavern and, some twenty minutes later, were joined by Gaskins inside the tavern. Gaskins handed Agent Crouch a package containing the heroin, which package bore no Internal Revenue stamps. Neither did Crouch furnish Gaskins with the Treasury Order Form required in a drug transaction. Gaskins demanded from Crouch $3 additional for transportation charges, which Crouch paid to him. The three then left the tavern. Gaskins entered the automobile in question, then parked at the corner, and drove off. Agent Crouch and the special employee left the scene and returned to the office of the Narcotic Bureau. The record is silent as to whether or not the Buick automobile was parked near the tavern when the two employees of the Narcotic Bureau entered it.

The claimants herein, Rosetta Brown and Juanita Young, have been engaged in the restaurant business at either 1715 or 1725 South Street in the City of Philadelphia since 1942. Gaskins, a roomer in the building, on occasions and at their request, drove the automobile to market to pick up groceries and other commodities needed in the restaurant business. At no time was he ever given free use of the automobile. His use of the automobile at the direction of the claimants was only on specific occasions and for limited purposes. He did, however, on a number of occasions, use the car without their consent or permission and on other occa-

sions, when sent on an errand, delayed his return for an undue length of time. Because of this improper use of the automobile, when one of the claimants obtained her driver's license in October of 1952, claimants denied Gaskins further use of the automobile. The testimony of the claimants indicates and the Court believes that while Gaskins was active in the narcotic traffic, neither of the claimants knew that he was either a drug addict or a drug peddler. There is no evidence from which the Court could find that the claimants knew or, as reasonable persons, should have known that when they directed Gaskins to use their automobile, it would be subjected to unlawful use. Although the evidence disclosed that the Narcotic Agents were suspicious and felt that the claimants might know something of the drug traffic, no substantive evidence was introduced which would in any way link either of the claimants with the drug traffic or any knowledge of it. Both claimants appeared in Court and testified and the Court was in a position to appraise their attitude and demeanor. Both frankly admitted that at the time the automobile was seized on March 18, 1953 they did not know, and they do not know now, whether or not Gaskins had permission to use the car on April 6, 1952, or whether or not they had sent him to the market to do shopping for them on that day. The Court feels that these answers were entirely truthful. Obviously, it would be impossible at such a late date, almost a full year later, to pinpoint activities in connection with the operation of an automobile at a date so far distant in time.

Claimants' contentions are threefold. (1), that the Government should be precluded from taking advantage and benefiting by the detriment and prejudice created by its own laches and inactivity in seizing the automobile approximately a year after the alleged offense and at a time when claimants were unable to say with certainty what the conditions were surrounding the operation of the automobile on the date in question. In other words, claimants ask for the application

of the doctrine of equitable estoppel. (2), the claimants contend that their testimony establishes the illegal use of the car as contemplated by Section 782 of Title 49 U.S.C. and that the use of an automobile without the consent of the owner is a criminal offense under the Motor Vehicle Laws of the Commonwealth of Pennsylvania, 75 P.S. § 231. Finally, (3), that the evidence adduced by the Government was insufficient to establish probable cause for the confiscation and forfeiture of the automobile.

I am not at all impressed with the first two contentions of the claimants. I do not feel that the facts here call for the application of the doctrine of equitable estoppel, nor do I feel that the claimants have met the burden imposed upon them of establishing actual unlawful use of the automobile. As to the third and final contention that the Government has failed to establish probable cause for the confiscation and forfeiture of the automobile, I feel the authorities support the position of the claimants. They cite in support of their contention, United States v. One 1952 Ford Victoria, D.C., 114 F.Supp. 458, 460; United States v. One 1949 Ford Sedan, D.C., 96 F.Supp. 341, and Platt v. United States, 10 Cir., 163 F.2d 165.

In the 1949 Ford Sedan case, supra, somewhat similar in facts to the instant case, an automobile owner loaned his automobile to his brother without knowledge that the brother was a narcotic peddler. The brother, as here, drove off in the automobile with the money which he received from the buyer to pay for drugs which were to be delivered later at a designated place. The court in that case refused forfeiture of the automobile.

In the Platt case, supra, the Court of Appeals reversed a decree of forfeiture where a mother loaned her car to her daughter, a known addict, who used the car to go to a drug store where she obtained contraband drugs. The mother did not know that the daughter's purpose in using the car was to obtain contraband drugs.

In the recent case of United States v. One 1951 Oldsmobile Sedan, D. C., 129 F.Supp. 321, this Court stated as follows:

"Where an automobile is used to lessen the burden or to assist in the task of executing the illegal transaction, even though the drug is never in the automobile, it 'facilitates' the sale or transportation within the meaning of the statute; where, however, the automobile is not in actuality a part of the transaction it does not 'facilitate' within the meaning of the statute."

That language, which the Court believes to be a correct statement of the rule, would be applicable to the instant case, if, under the facts as I have set them forth above, Gaskins was the owner of the automobile. But he was not.

It appears to the Court that the instant case is governed by the two cases above discussed, viz., the 1949 Ford Sedan and the Platt cases. We have here a situation where the Government asks the Court to determine as a matter of fact that the automobile was used within the terms of the statute to either "transport" or "facilitate" the sale of the narcotics. It is just as reasonable to assume that Gaskins used public transportation, as that he used the automobile here in question. His demand for excess "transportation costs" is more consistent with the use of public transportation than with the use of the automobile here in question. We are not dealing with an automobile owned by Gaskins. Innocent persons, the claimants herein, would suffer by a decree of forfeiture in this action. It appears to me from all of the testimony that the Government has failed to establish probable cause for the confiscation and forfeiture of the automobile and, therefore, its libel should be dismissed.

The statement of facts and conclusions of law set forth above may be considered as the Findings of Fact and Conclusions of Law of the Court in this case.

**412**

Requests for Findings of Fact and Conclusions of Law have been submitted by the Government and by the claimants.

The Court affirms the Government's Requests for Findings of Fact Nos. 1 to 6 inclusive. The Court denies Request No. 7.

The Court affirms the Government's Requests for Conclusions of Law Nos. 1 to ·9 inclusive. The Court denies Requests Nos. 10, 11 and 12.

The Court affirms Claimants' Requests for Findings of Fact Nos. 1 to 12 inclusive.

The Court affirms Claimants' Requests for Conclusions of Law Nos. 1 to 6 inclusive, and Requests Nos. 9 and 10. The Court denies Requests Nos. 7 and 8.

An appropriate ·order may be submitted.