UNITED STATES of America,
Plaintiff-Appellee,

v.

Richard MILLER, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Fenton Leon BASH and Samuel Woods,
Defendants-Appellants.
Nos. 15934, 15935.

United States Court of Appeals
Seventh Circuit.

June 9, 1967.

Rehearing Denied July 21, 1967,
en banc.

three defendants. Both cases involve the construction of 18 U.S.C. § 1952, which was added to the Criminal Code in 1961 as a part of the Attorney General's program to combat gambling, narcotics, prostitution, liquor and other offenses.

The common question in these cases is whether Section 1952 requires an intent to violate federal law by using any facility in interstate commerce. The District Court held that no such intent was required, and we agree.

In the first of the two cases, Richard Miller operated the Miller Recreation Parlor in Gary, Indiana. His premises consisted of a poolroom, barber and tobacco shop. Miller operated a baseball gambling pool there. The pool was concededly illegal under Indiana law. His patrons purchased baseball tickets. Game scores were obtained from a Western Union tickertape and posted on a blackboard. Miller would use the tickertape to determine baseball pool winners on days when the games were all completed in the afternoon. As part of his duties, Miller's porter would post scores from the tickertape on the blackboard. The baseball information contained on the Western Union tickertape was transmitted from Chicago to Gary, Indiana. Miller paid federal wagering taxes. Because of his admissions that the tickertape was used on occasion to determine payoffs, he does not question the sufficiency of the evidence to show his guilt.

In the second case, defendants Fenton Bash and Samuel Woods contend that there was no substantial evidence to show their guilt. This point was raised by their motion for a new trial. In denying that motion, the District Court ruled that there was "ample evidence * * * before the jury concerning defendants' carrying on of an unlawful gambling enterprise and the use of the wire tickertape facility which defendants had installed to promote and facilitate the carrying on of gambling activity they knew to be unlawful by the posting of scores from the machine to a blackboard on the premises" (258 F.Supp. at pp. 812–813).

Max Cohen, Robert R. Garrett, Gary, Ind., for appellant.

Philip Wilens, Dept. of Justice, Washington, D. C., Alfred W. Moellering, U. S. Atty., Fort Wayne, Ind., for appellee, Robert M. Ornstein, Atty., Dept. of Justice, of counsel.

Before SCHNACKENBERG, KNOCH and CUMMINGS, Circuit Judges.

CUMMINGS, Circuit Judge.

These companion cases were tried ten days apart by the same District Judge, with the same counsel representing the

In the case involving Bash and Woods, the evidence showed that Bash owned and Woods operated the Club Poolroom (also known as the Club Lunch) in Gary, Indiana. As in the Miller case, a baseball pool was operated on the premises in known violation of Indiana law. The customers used the Western Union ticker-tape there to post baseball scores on blackboards. Ralph ("Rum") Weinert also posted the tickertape results on the blackboards. Defendants' clerk Joseph Ortman slipped Weinert money "to get something to eat" in return for Weinert's casual work behind the cigar counter. As in the Miller case, the information transmitted by the Western Union tickertape originated in Chicago, and the federal wagering taxes were paid. Bash told an FBI agent that he used this machine "as a convenience in computing the end-of-game scores". Woods made similar admissions.

 Although there was no evidence that Miller or Bash personally posted scores obtained from the tickertape, the machine was used in their establishment to tabulate baseball scores to compute winning tickets. The applicability of the statute does not depend on whether a defendant personally operates the tickertape in conjunction with an illegal baseball pool. The key word of the statute is "uses", one of the most comprehensive words in our language. 91 C.J.S. 513, 518–519. This verb is defined in Webster's Third New International Dictionary as "to carry out a purpose or action by means of: make instrumental to an end or process: apply to advantage: turn to account * * *". Synonyms are "employ, utilize, apply, avail". (Idem p. 2524.) This word is to be given its ordinary meaning (Swalley v. Addressograph-Multigraph Corporation, 158 F.2d 51, 54 (7th Cir. 1946), certiorari denied, 330 U.S. 845, 67 S.Ct. 1086, 91 L.Ed. 1290; Great American Indemnity Co. of New York v. Saltzman, 213 F.2d 743, 746–747 (8th Cir. 1954), certiorari de-

nied, 348 U.S. 862, 75 S.Ct. 85, 99 L.Ed. 679) and is sufficiently broad to encompass defendants' operations. As proprietor and operator, respectively, of this business, the defendants were responsible for the installation and presence of the ticker on their premises. They wanted the ticker in their establishment so that the customers could check the scores. They provided blackboards so that scores obtained from the ticker could be posted. They knew that these scores would be of interest to their baseball pool customers. With defendants' knowledge and approval, their customers promoted the pool by posting the scores obtained from the tickertape. These activities constituted a "use" of an interstate facility by defendants.

 Even if the terms "use" were not sufficiently broad to include Bash's and Woods' activities, Section 2(b) of the Criminal Code,[1] which was included in the indictment, makes them liable as principals. Defendants Bash and Woods knew that their patrons were posting scores on the blackboards from information supplied by the tickertape. Thus through the use of an interstate facility the customers facilitated the carrying on of this business enterprise involving gambling violative of Indiana law. Because Woods and Bash consented to and condoned these illegal activities, they are punishable as principals. United States v. Leggett, 269 F.2d 35, 37 (7th Cir. 1959), certiorari denied, 361 U.S. 901, 80 S.Ct. 209, 4 L.Ed.2d 156; United States v. Inciso, 292 F.2d 374, 378 (7th Cir. 1961), certiorari denied, 368 U.S. 920, 82 S.Ct. 241, 7 L.Ed.2d 135; United States v. Zizzo, 338 F.2d 577, 580 (7th Cir. 1964), certiorari denied, 381 U.S. 915, 85 S.Ct. 1530, 14 L.Ed.2d 435. On appeal defendants have not challenged the applicability of Section 2(b) or assailed the instructions thereunder.

 Defendants in the second case also apparently argue that the ticker did

---

1. That Section provides: "Whoever causes an act to be done, which if directly performed by him would be an offense against the United States, is also a principal and punishable as such" (18 U.S.C. § 2(b)).

not facilitate gambling. Bash and Woods told FBI Agent Cox that the results of the tickertape machine were used to tabulate end-of-game scores, and for the purpose of paying off the baseball bets. It is true that the baseball pool could have been operated without the ticker, but nevertheless the ticker was maintained to obtain results as quickly as possible for the gambling customers. Section 1952 does not require that the ticker be essential to the gambling operation; it need only "facilitate" the carrying on of the illegal gambling. As used in this statute, "facilitate" means "to make easy or less difficult". United States v. Barrow, 212 F.Supp. 837, 840 (E.D.Pa.1962). The testimony of FBI Agents Cox and Hagan amply supports the jury's finding that defendants facilitated the carrying on of this gambling operation by keeping the ticker on their premises.

We next come to the question common to both cases, namely, whether the use of an interstate facility must be with intent to violate the Federal law and, concomitantly, whether ignorance of the Federal law should be considered by the jury in determining defendants' intent. Specifically, defendants argue that under Section 1952 an interstate facility must be used knowingly, willfully or intentionally. In resolving this question, reference of course must first be made to the statute itself. In pertinent part, Section 1952 of the Criminal Code (18 U.S.C. § 1952) provides as follows:

(a) Whoever * * * uses any facility in interstate or foreign commerce, including the mail, with intent to—

* * * * * *

(3) * * * promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,

* * * shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

(b) As used in this section "unlawful activity" means (1) any business enterprise involving gambling * * *

offenses in violation of the laws of the State in which they are committed

* * *.

From the wording of this statute, it is apparent that Congress did not require any *mens rea* with respect to the use of an interstate facility. In relevant part, Congress only required that there be intent to facilitate the carrying on of any business enterprise involving gambling in violation of state laws. If Congress had intended to require specific intent with respect to the use of the interstate facility, the phrase "with intent to" or its equivalent would have been juxtaposed to modify "uses" in Section 1952(a).

Even though "intent" as employed in Section 1952 here refers to a violation of State laws, all three defendants assert that the Government was also required to prove that the defendants intentionally, knowingly or willfully used an interstate facility. They insist that the jury should have been instructed that ignorance on their part that they were violating a Federal law was a relevant factor in determining whether they were guilty. In a well-reasoned opinion, the District Judge rejected this construction of Section 1952. We approve his conclusion that "the use of a facility in interstate commerce is a necessary jurisdictional element of an offense under Title 18 U.S.C. § 1952 but that no specific mental element or specific intent * * * need be shown with reference to such use" (258 F.Supp. at p. 812). Similarly, in Turf Center, Inc. v. United States, 325 F.2d 793, 797 (9th Cir. 1963), the District Court instructed the jury that Section 1952 only requires intent to violate State law, and the Ninth Circuit approved the instruction without also requiring an intent to violate the Federal law.

The judgment of the District Court is supported by analogous cases involving the receipt of stolen goods or automobiles that have been transported in interstate commerce. The decisions under the National Stolen Property Act

(18 U.S.C. § 2314) and Dyer Act (18 U.S.C. § 2311) establish that convictions thereunder are justified even though defendants did not know of the interstate transportation. See, e. g., United States v. Kierschke, 315 F.2d 315, 317 (6th Cir. 1963); Pilgrim v. United States, 266 F.2d 486, 488 (5th Cir. 1959); Donaldson v. United States, 82 F.2d 680, 681 (7th Cir. 1936). Those authorities convince us that persons otherwise guilty under Section 1952 cannot escape its purview because they intended only to violate State law. Here the Government need only show that there was the use of an interstate facility to satisfy the jurisdictional element of this offense; the commission of the balance of the offense, here gambling forbidden by State law, was conceded in both cases before us. It is undenied that defendants knew that the tickers were interstate facilities and knowingly retained them in their establishments. Such knowledge suffices to satisfy the jurisdictional portion of this statute. See United States v. Zizzo, 338 F.2d 577, 580 (7th Cir. 1964), certiorari denied, 381 U.S. 915, 85 S.Ct. 1530, 14 L.Ed.2d 435; United States v. Hawthorne, 356 F.2d 740, 742 (4th Cir. 1966), certiorari denied, 384 U.S. 908, 86 S.Ct. 1344, 16 L.Ed.2d 360.

■ As to defendants' professed ignorance of this Federal law, it is noteworthy that the Model Penal Code provides that knowledge of illegality is not ordinarily an element of an offense except where the statute expressly so provides. See American Law Institute Model Penal Code, Tentative Draft No. 4 (1955) Section 2.02(9) and Comments, pp. 130–131; see also Lambert v. People of State of California, 355 U.S. 225, 228, 78 S.Ct. 240, 2 L.Ed.2d 228; United States v. Gris, 247 F.2d 860, 864 (2d Cir. 1957); United States v. Mansavage, 178 F.2d 812, 817 (7th Cir. 1949), certiorari denied, 339 U.S. 931, 70 S.Ct. 665, 94 L.Ed. 1351. This statute of course does not fit the exception, for as to Federal law, it does not "expressly so provide". As to State law, the defendants all knew they were violating Indiana gambling laws. Section 1952 requires no more.

In support of their position, defendants rely principally on Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288, and Lambert v. People of State of California, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228. In *Morissette,* the Supreme Court was not dealing with a bifurcated statute like Section 1952. *Morissette* involved a statute punishing embezzlement, stealing, purloining or knowing conversion of Government property. The Court interpreted the statute as requiring criminal intent, for Congress was adopting a concept of crime already well-defined in common law. At the same time, the Court recognized that intent would not be required with respect to offenses not incorporated from the common law. See 342 U.S. at p. 262, 72 S.Ct. at p. 249. Accordingly, at the most *Morissette* requires intent with respect only to the second portion of Section 1952. Whereas the *Morissette* statute (as construed by the trial court) did not require intent, the second portion of Section 1952 requires intent to facilitate unlawful gambling activities.

Lambert v. People of State of California, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228, involved a Los Angeles ordinance making it an offense for a person convicted of a crime punishable in California as a felony to remain in Los Angeles for more than five days without registering with the chief of police. The Court held that actual knowledge of the duty to register or proof of the probability of such knowledge and subsequent failure to comply were necessary for a valid conviction. In holding that knowledge was an element of the offense, the Court emphasized that the ordinance dealt with wholly passive conduct. At the same time, the Court observed that a legislature need not include knowledge in a definition of an offense involving "the commission of acts, or the failure to act under circumstances that should alert the doer to the consequences of his deed". See 355 U.S. at p. 228, 78 S.Ct. at p. 243. In *Lambert,* the ordinance required

no criminal intent and the defendant had none. Here the statute requires that defendants intended to violate the Indiana gambling laws, and they admittedly knowingly violated those laws for years.

Defendants also rely upon Delaney v. United States, 199 F.2d 107 (1st Cir. 1952), involving Section 4047(e) (8) of the Internal Revenue Code of 1939 (now, with irrelevant changes, 26 U.S.C. § 7214(a) (7)).[2] That provision was akin to a common law crime of the type involved in the *Morissette* case, so that the *Delaney* trial judge charged the jury that in order to convict the defendant, they must find not only that the recitals in the certificate were false, but also that the defendant knew them to be false. The Court of Appeals did not decide whether the statute required scienter. *Delaney* is inapplicable for the same reasons as *Morissette* is inapplicable. Furthermore, Section 1952 here requires intent to violate State law and both juries were so instructed by the District Court. In rendering guilty verdicts, they necessarily found the only requisite intent.

■ In sentencing these defendants, the District Judge was sympathetic to federal jurisdiction to prosecute open and notorious gambling activities that the Indiana authorities had tolerated for too long. The legislative history of the statute shows, *inter alia*, that it was meant to condemn the use of an interstate facility *and* local gambling activities facilitated by the use of the interstate facility. See House Report No. 966, 2 U.S.Code, Congressional and Administrative News, 87th Cong., 1st Sess. (1961) at p. 2665. Congress fully intended this statute to apply to local gambling, for it "decided that the facilities of interstate commerce become tainted when they are used by persons with evil motives and who perform evil acts". United States v. Barrow, 212 F.Supp. 837, 842 (E.D.Pa.1962). Federal assistance was being proffered by Congress where local law enforcement had failed.

We are satisfied that there was sufficient evidence to sustain the Bash and Woods verdict and that the District Court construed the statute correctly. Therefore, the judgments are affirmed.

---

**2.** That provision of the Internal Revenue Code of 1939 provided fines and imprisonment for anyone "Who makes or signs any false entry in any book, or makes or signs any false certificate or return, in any case where he is by law or regulation required to make any entry, certificate or return".