**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John LOOKRETIS, Defendant-Appellant.
No. 17705.**

United States Court of Appeals,
Seventh Circuit.

Feb. 5, 1970.

Rehearing Denied Feb. 26, 1970.
Certiorari Denied May 18, 1970.
See 90 S.Ct. 1693.

**648**

Maurice J. Walsh, Carl M. Walsh, Chicago, Ill., for defendant-appellant.

Michael Carnes, Dept. of Justice, Washington, D. C., Alfred W. Moellering, U. S. Atty., Fort Wayne, Ind., J. Frank Kimbrough, Asst. U. S. Atty., Hammond, Ind., for plaintiff-appellee.

Before CASTLE, Chief Judge, KILEY, Circuit Judge, and KERNER, Circuit Judge.

CASTLE, Chief Judge.

Defendant appeals his conviction, rendered after a jury verdict of guilty, for violation of 18 U.S.C. §§ 1952 [1] and 2. [2]

The indictment contained three counts and charged defendant with the use, on three specific dates in 1965, of the interstate facilities of the Western Union Telegraph Company to carry on a business enterprise involving gambling offenses under the laws of Indiana. [3] The district court granted defendant's motion for a Bill of Particulars, which was filed by the Government and which charged defendant with using Western Union facilities at his place of business, Forsythe Recreation in East Chicago, Indiana, for the purpose of conducting a baseball pool. The Bill recited that on each of the three occasions charged in the indictment defendant, acting through an employee,

"sold certain pull-tab tickets upon which were printed numbers representing professional baseball teams, and upon which money pay-offs were to be made to persons holding tickets with certain number combinations at the conclusion of the games played that day. Winning tickets upon which pay-offs were to be made were to be determined by statistics of the specific teams whose identifying numbers were contained under the tab on each par-

---

1. 18 U.S.C. § 1952 provides in pertinent part:

"(a) Whoever * * * uses any facility in interstate or foreign commerce, including the mail, with intent to—

\* \* \* \* \* \*

(3) * * * promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, * * * shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

(b) As used in this section 'unlawful activity' means (1) any business enterprise involving gambling * * * offenses in violation of the laws of the State in which they are committed * * *."

2. 18 U.S.C. § 2 provides:

"(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission is punishable as a principal.

(b) Whoever wilfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

3. This was the second trial of defendant on this charge. The first, held before the district court sitting without a jury, resulted in a conviction which was affirmed by this Court in United States v. Lookretis, 385 F.2d 487 (7 Cir., 1967). The Supreme Court (at 390 U.S. 338, 88 S. Ct. 1097, 19 L.Ed.2d 1219) vacated that decision and remanded to this Court "for further consideration in the light of Chapman v. California, 386 U.S. 18 [87 S.Ct. 824, 17 L.Ed.2d 705], and Marchetti v. United States [390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889]." Upon remand, this Court held that a stipulation entered into by the defendant and the Government in the first trial fell within the *Marchetti* rule in that the disclosures made therein were compelled by the federal wagering tax statutes, and that the error was not harmless. Accordingly, we remanded for a new trial, which is the subject of the instant appeal. 398 F.2d 64.

ticular ticket. Such statistics of games played that day were received by employees of the defendant, from interstate wire facilities of the Western Union Company, at the defendant's place of business and posted on a blackboard."

Defendant moved for acquittal at the close of the Government's evidence and at the close of all evidence. Both motions were denied. The defense rested without presenting any evidence.

On appeal, defendant first contends that the court below erred in denying his motions for acquittal on the ground that the Government allegedly failed to produce sufficient evidence to establish guilt beyond a reasonable doubt. The evidence presented when viewed in the light most favorable to the Government with all reasonable inferences to be drawn therefrom, Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942), refutes this contention.

Three agents of the Federal Bureau of Investigation testified as to their purchases of the "baseball tickets" on the dates charged in the indictment. The first agent, Richard Tengstedt, testified that he entered Forsythe Recreation on July 20 and 21, 1965, where he observed a Western Union ticker tape machine in operation. Numerous people were in the establishment and many approached one of two men, one of whom was defendant Lookretis, behind a counter, asked for baseball tickets, and received tickets in exchange for money. Agent Tengstedt also watched an individual read the tape from the ticker tape machine and then walk directly from the machine to a blackboard and make "appropriate notations" on the board concerning baseball teams which were listed thereon. Tengstedt testified that on July 20 he purchased four pull-tab type tickets for a dollar from a man behind the counter (later identified as one Glen Berkowitz) and that on July 21 he made a like purchase from defendant. On the latter oc-casion there was some conversation between Tengstedt and defendant regarding the former's expressed concern over not being able to remember what the numbers represented. Defendant gave Tengstedt pencil and paper to record some of the names of teams and numbers that appeared on the blackboard.

Agent McCreight testified that he purchased three tickets at Forsythe Recreation on September 28, 1965 from a man whom he could not identify but who stated that they were baseball tickets. McCreight testified that on September 23 he was in the establishment and saw an individual writing on the blackboard after apparently reading from a paper tape. On the blackboard were the names of baseball teams which were numbered from 100 to 120, and scores for at least one game.[4]

Edward Bethune testified that he was an FBI agent during 1965 and that he had purchased tickets at Forsythe Recreation on September 28, 1965 from a man behind the counter, who had indicated, upon inquiry, that they were baseball tickets. Bethune observed an individual reading scores from the ticker tape machine to someone at the blackboard, who then recorded the scores. Bethune admitted that at the time of the purchase he did not understand what a baseball ticket was and that he had probably acquired the explanation of their meaning from conversations with other agents.

None of the agents who testified reported winning anything at Forsythe Recreation, although the Government introduced one witness who remembered winning "something like" $5 during 1965. The ticker tape machine which was seized in a raid on Forsythe Recreation on September 29, 1965, was introduced into evidence. A Western Union employee testified that he had installed a similar machine in Forsythe Recreation and that, while the serial number on the machine differed from that which the witness had installed, the witness explained this fact as resulting from the

---

4. The tickets introduced into evidence bore sets of numbers between 100 and 120.

practice of the Company not to keep records of serial numbers of machines subsequently exchanged for the original. This witness also testified that the transmissions received on the machine originated in Chicago, Illinois.

The blackboard was also seized and introduced into evidence. While there is indication that the writing appearing on the board at the time it was seized differed from the writing observed on the occasions the agents visited Forsythe Recreation, agent McCreight testified that the board had not been altered since it had been confiscated and agent Tengstedt testified that the board was in the same condition at trial as it was on July 20 and 21. The owner of the building in which Forsythe Recreation was located testified that he collected rent from defendant.

We are of the opinion that the evidence recited above, as well as the other testimony presented by the Government, supports the verdict of the jury. Defendant cites isolated testimony and evidence and argues that it does not establish guilt of the offense charged beyond a reasonable doubt. The evidence, however, must be viewed as a whole, and when so viewed supports the inference of guilt by establishing that: defendant operated an establishment in which he maintained a ticker tape machine which received baseball information transmitted across state lines; from the tape scores were posted on a blackboard; defendant or his employee sold "baseball tickets" to customers on which were written numbers representing baseball teams which were listed on the blackboard. A similar showing has been held by this Court to support a verdict of guilty under § 1952 in United States v. Miller, 379 F.2d 483, 485–486 (7th Cir., 1967), cert. den. 389 U.S. 930, 88 S.Ct. 291, 19 L.Ed.2d 281, and in this Court's first *Lookretis* opinion, *supra*. We

therefore hold that there was sufficient evidence to support the verdict in the instant case.

■ Defendant next contends that the district court erred in admitting into evidence the ticker tape machine and the blackboard, with the inscriptions appearing thereon. First, the ticker was unquestionably that which was seized on defendant's premises. Since the indictment charged that such a machine was used to facilitate the gambling enterprise and since the agents testified that the same or similar machine was used on the dates on which they purchased baseball tickets at Forsythe Recreation,[5] the machine was properly admitted. The fact that a ticker with a different serial number had been installed originally was, in light of the above, immaterial to the admissibility of the ticker into evidence.

Defendant's contention regarding the blackboard centers on the fact that although the board itself was present when the transactions occurred, there was allegedly no proof that the inscriptions which appeared on the board at trial were present on the dates the alleged offenses took place. This argument ignores the testimony of Agent Tengstedt that the board was in the same condition at trial as it was on July 20 and 21, 1965, when he purchased baseball tickets at Forsythe Recreation. The board was introduced to demonstrate that defendant maintained equipment to facilitate his gambling enterprise. The nature of such a board makes it likely that the figures on it will change from time to time, as new scores are received. This fact does not make the board itself inadmissible as evidence of gambling on the defendant's premises, no more than would the fact that the tape coming from the ticker changed continuously as new scores were transmitted and received. The general rule is that the ad-

5. Agent McCreight testified that the exhibit was the same machine he saw in Forsythe Recreation on the date he made his purchase; Agent Tengstedt stated that the exhibit was the machine seized in the September 29 raid; Agent Bethune testified that the machine he saw in Forsythe Recreation was similar to the machine produced by the Government at trial.

missibility of a physical object connected with a crime depends upon whether it is in substantially the same condition as when the crime was committed. The trial judge must look at the nature of the article as well as the chain of custody in making this determination, and his decision may not be overturned unless a clear abuse of discretion is shown. Moreover, if questions as to identification remain, the jury is free to disregard that evidence. See Brewer v. United States, 353 F.2d 260, 262 (8th Cir. 1965), and cases cited therein. We therefore hold that the board was properly admitted into evidence.

■ Defendant cites numerous other alleged errors, none of which has merit. Thus, the allegation on appeal that the trial judge improperly conducted the voir dire examination of prospective jurors will not be heard now, where no objection was made below, in the absence of a showing of plain error. United States v. Gulley, 404 F.2d 534, 536 (7th Cir. 1968); United States v. Jones, 204 F.2d 745, 748 (7th Cir. 1953), cert. den. 346 U.S. 854, 74 S.Ct. 67, 98 L.Ed. 368; Rule 52(b), Fed.Rules Crim.Proc. No such showing has been made in the instant case.

■ Likewise, the district court's recitation of the Indiana gambling statutes did not constitute reversible error. While some of the statutes recited by the court involved activities other than those allegedly conducted by defendant, we find no prejudicial error where the proof offered at trial did not exceed the boundaries of the charge. Moreover, the court was correct in instructing the jury that the Government need not prove intent to violate a federal law, but only a law of the State of Indiana. See Miller v. United States, supra, 379 F.2d at 486–487.

We also find no error in the district court's refusing to submit an interrogatory tendered by defendant to the jury and refusing to instruct the jury as requested by defendant. A review of the instructions given by the court reveals that defendant's theory of defense was properly put before the jury and that, contrary to defendant's contention, the jury was properly instructed on circumstantial evidence.

■ The attack on the constitutionality of § 1952 is similarly without merit in view of the many cases upholding the statute. United States v. Zizzo, 338 F.2d 577 (7th Cir. 1964), cert. den. 381 U.S. 915, 85 S.Ct. 1530, 14 L.Ed.2d 435; Gilstrap v. United States, 389 F.2d 6 (5th Cir. 1968); United States v. Barnes, 383 F.2d 287 (6th Cir. 1967), cert. den. 389 U.S. 1040, 88 S.Ct. 780, 19 L.Ed.2d 831; United States v. Barrow, 363 F.2d 62 (3d Cir. 1966), cert. den. 385 U.S. 1001, 87 S.Ct. 703, 17 L.Ed.2d 541.

■ Finally, we hold that the indictment was not defective on the grounds that it failed to inform defendant of the charges against him and lacked specificity. Hagner v. United States, 285 U.S. 427, 433, 52 S.Ct. 417, 76 L.Ed. 861 (1932); United States v. Debrow, 346 U.S. 374, 377–378, 74 S.Ct. 113, 98 L.Ed. 92 (1953); Turf Center, Inc. v. United States, 325 F.2d 793, 796 (9th Cir. 1963); United States v. Lookretis, 385 F.2d 487 (7th Cir. 1967), vacated on other grounds, 390 U.S. 338, 88 S.Ct. 1097, 19 L.Ed.2d 1219 (1967), rev'd on other grounds, 398 F.2d 64 (7th Cir. 1968).

For the foregoing reasons, the judgment of conviction is affirmed.

Affirmed.