**UNITED STATES of America,
Plaintiff,**

v.

**Ellen VITICH and James Vitich,
Defendants.**

No. 72–CR–89.

United States District Court,
W. D. Wisconsin.

April 12, 1973.

John O. Olson, U. S. Atty., Madison, Wis., for plaintiff.

John C. Fritschler, Jr., Madison, Wis., for defendants.

JAMES E. DOYLE, District Judge.

Defendants were indicted under the Travel Act (18 U.S.C. § 1952) for using a laundry service in interstate commerce to facilitate the operation of a prostitution business, illegal under the law of the State of Wisconsin. Defendants moved to dismiss the indictment on the ground that it fails to state an offense under 18 U.S.C. § 1952(a)(3). Subsequently, the parties stipulated that the court may consider the motion to dismiss as if it were a motion for judgment of acquittal filed during the trial at the close of the government's case. The parties stipulated further that for the purposes of deciding the motion, the court may assume that the government has proved the following facts: that the Vitiches jointly operated a prostitution enterprise in the French Casino and the Club 13, adjoining buildings in the city of Hurley, Wisconsin; that the prostitutes split the proceeds which they received from prostitution customers with the Vitiches on a fifty-fifty basis; that the prostitutes paid the Vitiches five dollars per day for room and board; that the Vitiches supplied the prostitutes with sheets and towels for the rooms where they slept as well as the necessary towels and linens used in their trade; that all of the sheets, towels, and linens used by the prostitutes were supplied to the Vitiches by the American Linen Supply Company of Duluth, Minnesota; that the Vitiches did not own any of these linens; that in the regular course of business the dirty linens were picked up at the French Casino and the Club 13 by a route man for the American Linen Supply Company; that the route man would return the dirty linens to Duluth, Minnesota, for laundering; that he would also supply clean sheets, towels, and linens to the Vitiches which had been laundered in Duluth and then transported to Hurley; that the Vitiches also used bar towels and hand towels in the operation of the bars in the two buildings; that these items were delivered by the American Linen Supply Company along with the linens delivered for use by the prostitutes; that during the month of November, 1971, the Vitiches employed between four and seven women as prostitutes in the establishments each day; that on or about November 23, 1971, American Linen Supply Company delivered from Duluth a supply of sheets, towels, and linens to the Club 13 and the French Casino; that some of the sheets, towels, and linens were subsequently used by the prostitutes; that the business continued throughout the remainder of 1971; that the Vitiches continued their management of the enterprise; that no Wisconsin based commercial laundry serviced Hurley, Wisconsin, during the year 1971; that during 1971, James Vitich sometimes paid American Linen Supply for its service; that when he paid he would issue a check drawn on the account of 19 Silver Street, Inc., the corporation which holds the liquor license for the French Casino and the Club 13; that on other occasions during 1971, Ellen Vitich paid American Linen Supply for the linen service; and that on the occasions on which she paid, payment was in cash.

The pertinent portions of the Travel Act are as follows:

"(a) Whoever . . . uses any facility in interstate . . . commerce, . . . with intent to—

. . .

(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,

and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

"(b) As used in this section 'unlawful activity' means (1) any business enterprise involving . . . prostitution offenses in violation of the laws of the State in which they are committed . . . ."

Defendants contend that "the interstate activity in this case is not sufficiently instrumental or central to the alleged illegal activity to be an offense" under the Travel Act; that there is no violation of that Act when "the interstate activity is merely incidental or the goal of the alleged criminal activity could be accomplished as well without the interstate activity."

Defendants rely in part upon United States v. Altobella, 442 F.2d 310 (7th Cir. 1971), in which the defendants were convicted of using interstate commerce to facilitate extortion activities illegal under Illinois law. The defendants, residents of Chicago, Illinois, extorted money from a person visiting Chicago from Philadelphia, Pennsylvania. The victim paid the defendants $100 by cashing a personal check in Chicago drawn on his Philadelphia bank. After being cleared by two Chicago banks, the check was forwarded to Philadelphia by mail. In reversing the conviction the Seventh Circuit stated that the use of the mails "was purely incident to appellants' sordid scheme. Their purpose would have been achieved equally well if the victim had borrowed $100 from associates at the hotel or written a check on a local bank." *Altobella, supra* at 315. The court noted that the Travel Act requires that some unlawful activity must take place after the use of interstate commerce. That requirement was satisfied in *Altobella* by the payment of $50 to an accomplice. The court then concluded:

"But when both the use of the interstate facility and the subsequent act are as minimal and incidental as in this case, we do not believe a federal crime has been committed." *Id.*

Soon after *Altobella*, the Seventh Circuit decided United States v. McCormick, 442 F.2d 316 (7th Cir. 1971), in which the defendant advertised in an Indianapolis newspaper for salesmen to sell lottery tickets. The paper's circulation of 15,000 included between 200 and 500 out-of-state readers. The defendant did not seek or employ out-of-state salesmen. After discussing Rewis v. United States, 401 U.S. 808, 91 S.Ct. 1056, 28 L.Ed.2d 493 (1971), in which the presence of out-of-state customers at a gambling enterprise was held not to bring the operation within the scope of the Travel Act, the Seventh Circuit reversed the conviction:

"The role played by the interstate mailings was 'a matter of happenstance' and 'minimal and incidental' to the operation of the illegal lottery. As in *Rewis* and *Altobella*, the interstate activities relied upon by the Government were the acts of others and were not actively sought or made a part of the illegal activity of the accused. There was no showing that defendant's lottery in any way depended upon or included interstate operations. Unlike United States v. Miller, 379 F.2d 483 (7th Cir. 1967), defendant neither 'used' nor 'caused to be used' any interstate facility as an instrumental part of his illegal operations." *McCormick, supra* 442 F.2d at p. 318.

From these decisions it appears that there are two predominant factors bearing on the question whether the interstate activities of an unlawful operation bring it within the ambit of the Travel Act: (1) the significance of the role of the interstate activity in the unlawful operation; (2) whether the use of interstate facilities was a matter of happenstance or a conscious decision on the part of the defendant.

The first factor is quite difficult to apply since there is no measurable standard for determining the signifi-

cance of interstate activity in an unlawful enterprise. Turning to the facts of this case, however, I think it clear that, for example, had the defendants purchased eggs in Michigan for the prostitutes' breakfast, such purchases would have played a role in the prostitution business of very small significance. On the other hand, extensive use of the mails to solicit customers for the prostitutes would be of considerable significance. I have concluded that the interstate activity in this case falls closer to the example involving use of the mails than to that involving the purchase of foreign eggs. The out-of-state laundry furnished to the defendants sheets and towels which the prostitutes used in the rooms where they entertained their customers. The linens are intimately connected with the prostitution business in a way that food for the prostitutes to eat is not.

It is true that defendants could have purchased and laundered their own sheets. However, this fact is not important. In United States v. Miller, 379 F. 2d 483 (7th Cir.), cert. den. 389 U.S. 930, 88 S.Ct. 291, 19 L.Ed.2d 281 (1967), the defendants were convicted under the Travel Act on the basis of their use of tickertape machines to tabulate baseball scores for the purpose of paying off debts incurred in their gambling business. Affirming the convictions, the Seventh Circuit stated:

> "It is true that the baseball pool could have been operated without the ticker, but nevertheless the ticker was maintained to obtain results as quickly as possible for the gambling customers. Section 1952 does not require that the ticker be essential to the gambling operation; it need only 'facilitate' the carrying on of the illegal gambling. As used in this statute, 'facilitate' means 'to make easy or less difficult'. United States v. Barrow, 212 F.Supp. 837, 840 (E.D.Pa.1962)." *Miller, supra* at 486.

Thus, the availability of methods for operating the prostitution business without the use of interstate facilities does not exempt defendants from the coverage of the Travel Act. *See also* United States v. Barnes, 383 F.2d 287, 289 (6th Cir. 1967), cert. den. 389 U.S. 1040, 88 S.Ct. 780, 19 L.Ed.2d 831 (1968). I am persuaded that the laundry service in this case "facilitated" the carrying on of the prostitution business within the *Miller* court's definition of that term.

Any doubts which linger with me after examining the first factor, are dispelled by an examination of the second. In *McCormick, supra,* 442 F.2d at 318, the court stressed that: "As in *Rewis* and *Altobella,* the interstate activities relied upon by the Government were the acts of others and were not actively sought or made a part of the illegal activity of the accused." In this case, on the other hand, the defendants intentionally engaged the services of an out-of-state business. This fact in conjunction with the importance of linen services to the prostitution business, convince me that the facts as stipulated by the parties state an offense under the Travel Act.

Accordingly, defendants' motion for judgment of acquittal is hereby denied.