507 F.2d 446
 UNITED STATES of America, Appellant,
v.
GIBSON SPECIALTY COMPANY and Patrick Zurla, Appellees.
UNITED STATES of America, Appellant,
v.
PEERLESS PROCUCTS, INC., et al., Appellees.
UNITED STATES of America, Appellant,
v.
EMPIRE PRESS, INC., et al., Appellees.
UNITED STATES of America, Appellant,
v.
UNIVERSAL MANUFACTURING COMPANY et al., Appellees.
 Nos. 73-2988 to 73-2991.
 United States Court of Appeals, Ninth Circuit.
 Nov. 21, 1974.
 
 Frederick W. Read, III, Atty. (argued), U.S. Dept. of Justice, Washington, D.C., for appellant.
 Raymond J. Smith, of Crowley, Nash & Shea (argued), Chicago, Ill., for Gibson Specialty Co.
 Michael B. Nash (argued) of Crowley, Nash & Shea, Chicago, Ill., for Peerless Products, Inc.
 Ralph Wright (argued) of Sandall Moses & Cavan, Billings, Mont., for Empire Press, Inc.
 F. Russell Millin (argued) Kansas City, Mo., for Universal Mfg. Co.
 Before KOELSCH and SNEED, Circuit Judges, and LINDBERG, District judge.*
 OPINION
 LINDBERG, District Judge.
 On November 2, 1972, a federal grand jury in the district of Montana returned four separate multi-count indictments against the individual and business defendants named in the caption. The defendants are manufacturers of punchboards and pulltabs. Violations of the travel act[1] were charged.[2] Motions to dismiss were filed by all of the defendants. The prosecution and the defendants entered into stipulations of fact.[3] By agreement of counsel, the four actions were consolidated for a hearing. On August 17, 1973, the district court granted the motions to dismiss on the ground that the stipulated facts revealed commission of no crime within the purview of the travel act. The prosecution has appealed.
 In urging reversal of the district court, the prosecution notes the applicable sections of the travel act and argues three points: (1) The travel act is meant to permit federal powers to aid in-state authorities in policing criminal activity the effect of which is local but the support and organization of which is national; accordingly, the act must be construed as follows: (a) Because possession of punchboards and pulltabs is prohibited in Montana, certain distributors, to whom the defendants sold punchboards and pulltabs, were engaged in 'unlawful activities.' (b) The defendants intended to and did 'facilitate' the 'unlawful activities' of the distributors by selling them punchboards and pulltabs in interstate commerce. (2) The legislative history of the federal statute banning interstate transportation of wagering paraphernalia[4] suggests that that statute does not treat punchboards and pulltabs; however, the legislative history of the wagering paraphernalia statute does not control construction of the travel act, which has a broader reach. Erlenbaugh v. United States, 409 U.S. 239, 93 S.Ct. 477, 34 L.Ed.2d 446 (1972). (3) It is irrelevant that the particular use made of interstate commerce is innocuous. Menendez v. United States, 393 F.2d 312 (5th Cir. 1968). The conclusion which the prosecution attempts to reach with this argument is: A sale of goods by an independent manufacturer effected through any medium in interstate commerce, which aids in certain kinds of violation of state law, is a violation of the travel act.
 We do not agree. We hold that the district court's dismissal of the four actions was proper because neither the defendants' intention to facilitate nor the defendants' actual facilitation of unlawful activities in Montana were shown.[5] Having resolved the matter on this basis, we do not reach other issues raised by counsel.
 This court has many times construed the travel act; and the scope of the act, although broad indeed, is not unlimited. United States v. Polizzi,500 F.2d 856 (9th Cir. 1974); United States v. Colacurcio, 499 F.2d 1401 (9th Cir. 1974); United States v. Donaway, 447 F.2d 940 (9th Cir. 1971); United States v. Cozzetti, 441 F.2d 344 (9th Cir. 1971); United States v. Roselli, 432 F.2d 879 (9th Cir. 1970); Marshall v. United States, 355 F.2d 999 (9th Cir. 1966); Turf Center, Inc. v. United States, 325 F.2d 793 (9th Cir. 1963). In order to mount a successful prosecution under those portions of the travel act applicable here, the following elements must be proved: (1) that an accused voluntarily used the facilities of interstate commerce; (2) that the accused attempted to or did on fact promote, manage, establish, carry on or facilitate the promotion, management, establishment or carrying on of any one of certain statutorily defined activities; and (3) that the accused formed a specific intent to promote, manage, establish, carry on or facilitate one of the prohibited activities. United States v. Gebhart, 441 F.2d 1261 (6th Cir. 1971). Put simply, the prosecution has failed to establish all elements of the offense.
 INTENT
 In enacting the legislation involved here, Congress 'required that there be intent to facilitate the carrying on of (some) business enterprise involving gambling in violation of state laws.' United States v. Miller,379 F.2d 483, 486 (7th Cir. 1967). The burden is upon the United States to prove intent. Turf Center, Inc. v. United States, 325 F.2d 793 (9th Cir. 1963).
 Where, as in the travel act, intent to facilitate a criminal venture is expressly made part of the offense, we cannot extend the statute by holding that proof of a lesser mens rea is sufficient to establish the crime. In our opinion, in order for a prosecutor to show that a manufacturer has violated the travel act by selling punchboards and pulltabs under circumstances similar to those involved here, the prosecutor must show that the manufacturer in some significant manner associated himself with the purchaser's criminal venture for the purpose of its advancement. Were we not to define intent in the travel act in this manner, the act would be plagued by the very overexpansiveness which Congress sought to rule out by inclusion of an express mens rea requirement. Cf. United States v. Sin Nagh Fong, 490 F.2d 527 (9th Cir. 1974); United States v. Greer, 467 F.2d 1064 (7th Cir. 1972); United States v. Peoni, 100 F.2d 401 (2nd Cir. 1938); Model Penal Code 2.06(3)(a).
 Applying the test delineated above to the stipulated facts, we conclude that the requisite specific intent has not been shown. None of the stipulations shows more than that a non-Montana manufacturer has produced catalogues, filled orders for punchboards and pulltabs from Montanans, billed the buyers, and received payment. In fact, the prosecution has baldly conceded in two of the stipulations that the defendants have no financial interest in or control over the Montana distributorships to which the punchboards and pulltabs were sold. There is no evidence in the record, direct or circumstantial, from which one could infer that the defendants associated with, participated in or sought to make succeed the Montana operations.
 We have reached this conclusion without focussing upon the defendants' knowledge of Montana law. It is a question whether any of the defendants here knew what Montana law was with respect to punchboards and pulltabs.[6] And it is a question whether the familiar presumption that every person knows what the law forbids could aid the prosecution in establishing that defendants knew they were vending goods to violators of state law. Compare, Windsor v. United States, 384 F.2d 535 (9th Cir. 1967); United States v. Miller, 379 F.2d 483 (7th Cir. 1967); and Phillips v. United States, 356 F.2d 297 (9th Cir. 1965); with Turf Center, Inc. v. United States, 325 F.2d 793 (9th Cir. 1963). Nevertheless, we have assumed both that the defendants knew the text of the pertinent Montana statutes and that the construction placed on those statutes by the prosecution is correct.[7] Even making these assumptions, we cannot find that the defendants by selling to Montanans intended, within the meaning of the travel act, to facilitate a violation of state law.[8]
 FACILITATION
 In the context of the travel act as well as in that of other statutes, the term 'facilitate' has been held to have its ordinary meaning: 'to make easy or less difficult.' United States v. Judkins, 428 F.2d 333 (6th Cir. 1970); United States v. Miller, 379 F.2d 483 (7th Cir. United States v. Teemer, 214 F.Supp. 952 (D.W.Va.1963); United States v. Barrow, 212 F.Supp. 837 (D.Penn.1962); United States v. One 1949 Ford Sedan, 96 F.Supp. 341 (D.N.C.1951). As some of the cited cases demonstrate, not every action which, in a literal sense, eases or renders less difficult a law violation has been held to constitute legal facilitation.
 In Rewis v. United States, 418 F.2d 1218 (5th Cir. 1969), it was held that patronizing by interstate gamblers of a gambling establishment did not constitute 'facilitation' such that the gamblers themselves could be charged with violation of the travel act. The United States Supreme Court expressly approved the position taken on this issue by the Court of Appeals for the Fifth Circuit. Rewis v. United States, 401 U.S. 808, 811, 91 S.Ct. 1056, 28 L.Ed.2d 493 (1971). In so doing the Court noted the maxim that any ambiguity in criminal statutes should be resolved in favor of lenity. See also, United States v. Bass, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971); United States v. Isaacs, 493 F.2d 1124 (7th Cir. 1974). We are of the opinion that application of this familiar rule of statutory construction is warranted in the instant case.
 There is another important consideration which leads us to our conclusion. A reading of the travel act as broad as that urged by the prosecution has the potential of altering sensitive federal-state relationships and could overextend limited federal police resources. Erlenbaugh v. United States, 409 U.S. 239, 247 n. 21, 93 S.ct. 477, 34 L.Ed.2d 446 (1972); United States v. Archer, 486 F.2d 670 (2nd Cir. 1973) (Friendly, J.).
 
 
 1
 The facts adduced here reveal aid and assistance to alleged Montana law violators of quite an attenuated nature. Moreover, were the kind of assistance rendered here held to constitute a violation of the travel act, a possible precedent would have been established for indicting lessors, servicemen, and vendors of all kinds, who deal interstate with certain types of offenders. Bringing the resources of the federal police power to bear upon acts of the sort involved in the instant case cannot have been the purpose of Congress in proscribing the acts enumerated within the statute.[9] Consequently, we hold that, as a matter of law, 'facilitation' within the meaning of the travel act has not occurred in the instant case.
 
 CONCLUSION
 
 2
 The decision of the district court is affirmed. The stipulated facts do not show 'intent to facilitate' the carrying on of a business enterprise involving gambling in violation of state law. Alternatively, the stipulated facts do not show actual 'facilitation' of such a business enterprise.
 
 APPENDIX
 
 3
 Excerpts from the stipulations entered into by the prosecution and the four groups of defendants appear below.
 
 
 4
 * The stipulation between the prosecution and Gibson Specialty Company and Patrick Zurla provides in part:
 
 
 5
 * That the individual defendants are the owners and operators of a manufacturing firm, doing business as Gibson Specialty Company, a defendant, of Chicago, Illinois, which has for sale, other things, punchboards.
 
 II
 
 6
 That each of the alleged and designated co-conspirators were residents of the State of Montana.
 
 
 7
 That co-conspirator T.J. Small of Missoula, Montana, if called, would testify that he did as follows: 'On many different occasions between December 7, 1967, and June 25, 1971, order certain punchboards from the defendants or their employees, either by telephone or other form of interstate communication. The merchandise was subsequently shipped from Chicago, Illinois, by the defendants, using the facilities of a common carrier, and delivered to T.J. Small in Missoula, Montana, as evidenced by original invoices, freight bills and personal checks marked as to the specific counts of the Indictment filed herein that they correspond with.'
 
 
 8
 That co-conspirator Wesley Mullaney, doing business as Jerry's Distributing Company, Butte, Montana, if called, would testify that he did as follows: 'On many different occasions between December 20, 1967, and September 28, 1971, order certain punchboards from the defendants or their employees, either by telephone or other form of interstate communication. The merchandise was subsequently shipped from Chicago, Illinois, by the defendants, using the facilities of a common carrier, and delivered to Wesley Mullaney of Butte, Montana, doing business as Jerry's Distributing Company, as evidenced by original invoices, freight bills and personal checks marked as to the specific counts of the Indictment filed herein that they correspond with.'
 
 
 9
 That co-conspirator C. Bernard Heiser of Baker, Montana, doing business as Ace Novelty Company, if called, would testify that he did as follows: 'On December 2, 1968, order punchboards from the defendants or their employees, either by telephone or other form of interstate communication. The merchandise was subsequently shipped from Chicago, Illinois, by the defendants, using the facilities of a common carrier, and delivered to C. Bernard Heiser of Baker, Montana, as evidenced by original invoices, freight bills and person checks marked as to the specific counts of the Indictment filed herein that they correspond with.'
 
 III
 
 10
 If called to testify, T.J. Small, Wesley Mullaney doing business as Jerry's Distributing Company and C. Bernard Heiser doing business as Ace Novelty Company would say that upon receipt of the merchandise from defendants as set forth above, they would pay the amount requested by the defendants, as indicated on invoices prepared by the defendants, by sending business checks to the defendants which were cashed in the normal course of banking, some of said checks being attached and marked as to the specific counts of the indictment filed herein that they correspond with.
 
 IV
 
 11
 That if called, T.J. Small, Wesley Mullaney doing business as Jerry's Distributing Company, and C. Bernard Heiser doing business as Ace Novelty Company, would say that after receipt of the merchandise, they would and did distribute and resell the merchandise to persons and firms unknown to the defendants which firms or persons offered and sold the same for the use of the general public in the State of Montana . . ..
 
 VII
 
 12
 Nothing in this stipulation shall preclude any defendant from presenting any competent evidence with respect to any indictment filed concerning the question of conspiracy between the parties named in the indictment or other persons or with respect to their knowledge and intent to violate the law . . ..
 
 B
 
 13
 The stipulation between the prosecution and Peerless Products, Inc., Marshall Maltz and Benjamin Maltz provides in part:
 
 
 14
 * That the individual defendants are the owners and operators of a manufacturing firm, doing business as Peerless Products, Inc., a defendant, of Chicago, Illinois, which has for sale, among other things, punchboards.
 
 II
 
 15
 That each of the alleged and designated co-conspirators were residents of the State of Montana. That if called, co-conspirator Wesley Mullaney, doing business as Jerry's Distributing Company of Butte, Montana, would testify that he did, on many different occasions between December 22, 1967, and June 17, 1971, order certain punchboards from the defendants or their employees, either by telephone or other form of interstate communication. The merchandise was subsequently shipped from Chicago, Illinois, by the defendants, using the facilities of a common carrier, and delivered to Wesley Mullaney, doing business as Jerry's Distributing Company, Butte, Montana.
 
 
 16
 That if called, co-conspirator P.K. Dickson, doing business as Havre Distributing Company, Havre, Montana, would testify that he did, on many different occasions between July 1, 1967, and March 16, 1972, order certain punchboards from the defendants or their employees, either by telephone or their employees, of interstate communication. The merchandise was subsequently shipped from Chicago, Illinois, by the defendants, using the facilities of a common carrier and delivered to P. K. Dickson, doing business as Havre Distributing Company, Havre, Montana.
 
 III
 
 17
 If called, Wesley Mullaney, doing business as Jerry's Distributing Company and P. K. Dickson, doing business as Havre Distributing Company, Havre, Montana, would testify that upon receipt of the merchandise from defendants as set forth above, they would pay the amount requested by the defendants, as indicated on invoices prepared by the defendants, by sending business checks to the defendants which were cashed in the normal course of banking, as appears on original invoices as attached and marked as to the specific counts of the indictment filed herein that they correspond with . . ..
 
 V
 
 18
 Nothing in this stipulation shall preclude any defendant from presenting any competent evidence with respect to any indictment filed concerning the question of conspiracy between the parties named in the indictment or other persons or with respect to their knowledge and intent to violate the law.
 
 VI
 
 19
 If called, Wesley Mullaney, doing business as Jerry's Distributing Company, and P. K. Dickson, doing business as Havre Distributing Company, would testify that after receipt of the punchboards, they would and did distribute and resell the merchandise to persons and firms unknown to the defendants, which persons and firms then offered and sold the same for the use of the general public in the State of Montana . . ..
 
 C
 
 20
 The stipulation between the prosecution and Empire Press, Inc., Sylvia Zimmerman, Abraham Zimmerman and Herman Ellyne provides in part:
 
 
 21
 * That the individual defendants are the owners and operators of a manufacturing firm, doing business as Empire Press, Inc., a defendant, with its principal place of business in Chicago, Illinois, which manufactures and has for sale, among other things, punchboards, bingo refills, pulltabs.
 
 II
 
 22
 That the Empire Press, Inc. had produced and distributed catalogues and price lists for their merchandise, which were available to and used by the alleged and designated co-conspirators of the indictment to order merchandise therefrom.
 
 III
 
 23
 That each of the alleged and designated co-conspirators were residents of the State of Montana. That co-conspirator P. K. Dickson, doing business as Havre Distributing Company of Havre, Montana, did, on many different occasions between November 21, 1967, and March 20, 1972, order certain punchboards, bingo refills, Montana Jar-O, and other gambling paraphernalia from the defendants or their employees, either by telephone or other form of interstate communication. The merchandise was subsequently shipped from Chicago, Illinois, by the defendants, using the facilities of a common carrier, and delivered to P. K. Dickson, doing business as Havre Distributing Company, Havre, Montana.
 
 
 24
 That co-conspirator Wesley Mullaney, doing business as Jerry's Distributing Company, Butte, Montana, did, on many different occasions between January 4, 1968, and March 22, 1972, order certain punchboards, spindle refills and other gambling paraphernalia from the defendants or their employees, either by telephone or other form of interstate communication. The merchandise was subsequently shipped from Chicago, Illinois, by the defendants, using the facilities of a common carrier, and delivered to Wesley Mullaney of Butte, Montana, doing business as Jerry's Distributing Company.
 
 
 25
 That co-conspirator C. Bernard Heiser, doing business as Golden Surprise of Baker, Montana, did, on many different occasions between June 11, 1968, and May 18, 1969, order certain punchboards, pulltabs and other gambling paraphernalia from the defendants or their employees, either by telephone or other form of interstate communication. The merchandise was subsequently shipped from Chicago, Illinois, by the defendants, using the facilities of a common carrier, and delivered to C. Bernard Heiser, doing business as Golden Surprise of Baker, Montana.
 
 IV
 
 26
 That upon receipt of the merchandise from defendants as set forth above, P.K. Dickson, doing business as Havre Distributing Company, Wesley Mullaney, doing business as Jerry's Distributing Company and C. Bernard Heiser, doing business as Golden Surprise, would pay the amount requested by the defendants, as indicated on invoices prepared by the defendants, by sending business checks to the defendants which were cashed in the normal course of banking . . ..
 
 VI
 
 27
 That after receipt of the punchboards, bingo refills, pulltabs, Montana Jar-O, spindle refills and other gambling paraphernalia, P. K. Dickson, doing business as Havre Distributing Company, Wesley Mullaney, doing business as Jerry's Distributing Company, and C. Bernard Heiser, doing business as Golden Surprise would and did distribute and resell the merchandise to persons and firms unknown to the defendants . . ..
 
 VIII
 
 28
 That the defendants in this case have no financial interest in or control over any of the businesses owned or operated by any of the co-conspirators named in the indictment.
 
 IX
 
 29
 That none of the defendants, or personal representatives of the defendants, except their attorney, have been in the State of Montana at any time germane to this action . . ..
 
 D
 
 30
 The stipulation between the prosecution and Universal Manufacturing Company, Joyce Wilner and Oscar Wilner provides in part:
 
 
 31
 1. Defendant Joyce A. Wilner owns and defendant Oscar Norman Wilner manages the manufacturing firm doing business as Universal Manufacturing Company, a corporate defendant named herein, whose principal place of business is at Kansas City, Missouri.
 
 
 32
 2. That T. J. Small, of Missoula, Montana, P. K. Dickson, dba Havre Distributing Company, Havre, Montana, Wesley Mullaney, dba Jerry's Distributing Company, Butte, Montana and C. Bernard Heiser, of Baker, Montana, were and are residents of the State of Montana.
 
 
 33
 3. That T. J. Small of Missoula, Montana, did on many different occasions between April 12, 1968 and June 18, 1971, order certain punchboards, bingo refills and red, white and bule singles, from the defendants, or their employees, either by telephone or other form of interstate communication. The merchandise was subsequently shipped from Kansas City, Missouri, by the defendants, using the facilities of a common carrier, and delivered to T. J. Small in Missoula, Montana.
 
 
 34
 That P. K. Dickson, doing business as Havre Distributing Company, Havre, Montana, did, on many occasions between May 18, 1967 and December 12, 1971, order certain bingo refills and red, white and blue singles from the defendants or their employees, either by telephone or other form of interstate communication. The merchandise was subsequently shipped from Kansas City, Missouri, by the defendants, using the facilities of a common carrier, and delivered to P. K. Dickson, of Havre, Montana, doing business as Havre Distributing Company.
 
 
 35
 That Wesley Mullaney, doing business as Jerry's Distributing Company, Butte, Montana, did, on many occasions between January 23, 1968 and August 4, 1971, order certain bingo refills and red. white, and blue singles from the defendants or thier employees, either by telephone or other form of interstate communication. The merchandise was subsequently shipped from Kansas City, Missouri by the defendants, using the facilities of a common carrier, and delivered to Wesley Mullaney of Butte, Montana, doing business as Jerry's Distributing Company.
 
 
 36
 That C. Bernard Heiser of Baker, Montana, did, on January 20, 1971, order 250 regular 30-section tip punch-boards, from the defendants or their employees, either by telephone or other from of interstate communication. The merchandise was subsequently shipped from Kansas City, Missouri, by the defendants, using the facilities of a common carrier, and delivered to C. Bernard Heiser of Baker, Montana.
 
 
 37
 4. That upon receipt of the merchandise from the defendants as set forth above T. J. Small, P. K. Dickson, doing business as Havre Distributing Company, Wesley Mullaney dba Jerry's Distributing Company and C. Bernard Heiser would pay the amount requested by the defendants, as indicated on the invoices prepared by the defendants, by sending business checks to the defendants which were cashed in the normal course of banking . . ..
 
 
 38
 6. After receipt of the punchboards, bingo refills, red, white, and blue singles, T. J. Small, P. K. Diskson dba Havre Distributing Company, wesley Mullaney dba Jerry's Distributing Company, and C. Bernard Heiser would and did distribute and resell the merchandise to persons and firms unknown to the defendants . . ..
 
 
 39
 8. Defendants Oscar Norman Wilner and Universal Manufacturing Company have no financial interest in or control over any of the businesses operated or owned by any of the co-conspirators named in the indictment.
 
 
 40
 9. Neither defendant Oscar Norman Wilner nor any personal representative of defendant Universal Manufacturing Company, except their attorney, has been in the State of Montana at any time during the period 1967 to date . . ..
 
 
 
 *
 The Honorable William J. Lindberg, Senior United States District Judge sitting by designation
 
 
 [1]
 18 U.S.C. 1952 (1970). The act provides:
 (a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to--
 (1) distribute the proceeds of any unlawful activity; or (2) commit any crime of violence to further any unlawful activity; or (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,
 and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.
 (b) As used in this section 'unlawful activity' means (1) any business enterprise involving gambling, liquor on which the Federal excise tax has not been paid, narcotics or controlled substances (as defined in section 102(6) of the Controlled Substances Act), or prostitution offenses in violation of the laws of the State in which they are committed or of the United States, or (2) extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States.
 (c) Investigations of violations under this section involving liquor shall be conducted under the supervision of the Secretary of the Treasury.
 
 
 [2]
 The indictments charged the defendants, inter alia, with facilitating violation of Rev.Codes of Mont. 94-2401, 94-2404 (1969). Those sections provide:
 94-2401. Every person . . . who conducts, or causes to be conducted, operates or runs . . . any game of chance played with cards, dice or any device whatsoever, or who runs or conducts or causes to be run or conducted, or keeps any slot machine, punchboard, or other similar machine or device, or permits the same to be run or conducted for money, checks, credits, or any representative of value, or any property or thing whatsoever, or any person owning or in charge of any cigar store, drugstore, or other place of business, or any place where drinks are sold or served, who permits any of the games prohibited in this section to be played, in or about such cigar store, drugstore or other place of business, or permits any slot machine, punchboard, or similar device to be kept therein . . . and every person who plays or bets at or against said prohibited games or devices . . . is guilty of a misdemeanor . . ..
 94-2404. Any person who has in his possession . . . any machine or apparatus of the kind mentioned in the preceding section of this act, is punishable by a fine . . . and may be imprisoned . . ..
 
 
 [3]
 Pertinent portions of these stipulations are set forth in the Appendix
 
 
 [4]
 18 U.S.C. 1953 (1970)
 
 
 [5]
 It should be noted that, although review technically is of a motion to dismiss, we take the view that the stipulated facts represent the sum of the prosecution's case. Thus, rather than the sufficiency of the indictment, the sufficiency of the government's proof has been tested
 
 
 [6]
 The defendants in two of the four actions reserved the right to present at trial, as they might properly have done, evidence negativing knowledge of and intent to violate state law
 
 
 [7]
 At oral argument counsel for the United States informed us that, under any circumstances, possession of a punchboard or pulltab in Montana constituted a violation of Rev.Codes of Mont. 94-2404. By making this assumption we neither approve nor disapprove the prosecution's construction of that statute
 
 
 [8]
 The presumption that one intends the natural and probable consequences of his actions is insufficient in this context to establish intent to facilitate criminal activity. It is as likely as not that a vendor similar to the defendants in this proceeding is totally indifferent to the actions of his purchaser
 
 
 [9]
 Our research has revealed no cases where a remote seller, uninvolved in an actual gambling operation, has been successfully tried and convicted under the travel act