**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Fred CAMPAGNUOLO, John Campagnuolo, and Michael Gougules,
Defendants-Appellees.**

No. 76–1305.

United States Court of Appeals,
Fifth Circuit.

Aug. 4, 1977.

---

Robert W. Rust, U. S. Atty., Miami, Fla., Michael A. LeVota, Sp. Atty., U. S. Dept. of Justice, Miami, Fla., Marc Philip Richman, Atty., c/o T. George Gilinsky, Jerome M. Feit, Atty., Washington, D. C., for plaintiff-appellant.

James J. Hogan, Miami, Fla., for Fred Campagnuolo.

Joseph Mincberg, Miami, Fla., R. J. Randolph, Stuart, Fla., for defendants-appellees.

Before MORGAN and HILL, Circuit Judges, and NOEL,* Senior District Judge.

NOEL, Senior District Judge:

By this appeal, the Government seeks the reversal of an order by the trial court suppressing evidence derived from a wiretap and dismissing an indictment that charged appellees with violations of federal gambling statutes. The record reveals that intercepted telephone conversations were disclosed on two different occasions to the grand jury that returned the indictment, and that a disclosure order pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2517(5), was obtained only after the first disclosure was made. Section 2517(5) provides that intercepted communications relating to offenses other than those specified in the wiretap authorization order may be disclosed while giving testimony only when approved by a judge. The trial court ruled that the initial disclosure made by the Government violated this requirement. We reverse, concluding that a disclosure order under section 2517(5) was not required at the time the conversations were first disclosed to the grand jury.

In December, 1973, the trial court granted the Government's application for an order authorizing the wire interception of six telephones used by Appellee Fred Campagnuolo and others. On the basis of the application and an accompanying affidavit by an agent of the Federal Bureau of Investigation (FBI), the court found that there was probable cause to believe that Campagnuolo and other persons were using specified telephones to commit gambling offenses in violation of the laws of the state of Florida and 18 U.S.C. § 1955, as well as conspiring to commit those offenses in violation of 18 U.S.C. § 371. The trial court's order authorized FBI agents to intercept wire communications concerning those offenses. The interception commenced on December 6, 1973, and was terminated on December 13th after the FBI determined that the objectives of the interception were achieved on some telephones, and that the taps of other telephones were not productive. The validity of the Government's application and of the court's authorization order are not questioned in this appeal.

■ On April 18, 1975, Carl Aurillio, whose conversations had been intercepted during the wiretap and who was later named as an unindicted co-conspirator, appeared before the grand jury under a grant of immunity. The prosecutor called Aurillio as a witness in an attempt to establish a violation of section 1955. That statute makes a federal offense of the operation of a gambling business for over thirty days by five or more persons in violation of state law. Although the interstate commerce clause provides the constitutional basis for section 1955, proof of some interstate activity is not an element of the offense. *United States v. Harris*, 460 F.2d 1041, 1948 (5th Cir.), *cert. denied*, 409 U.S. 877, 93 S.Ct. 128, 34 L.Ed.2d 130 (1972); *Schneider v. United States*, 459 F.2d 540, 542 (8th Cir.), *cert. denied*, 409 U.S. 877, 93 S.Ct. 129, 34 L.Ed.2d 131 (1972). In an effort to establish that at least five persons were involved in the gambling operation, the prosecutor used information obtained from several interstate telephone calls to formulate such general questions as "Do you know where the line came from? Did the line, to your knowledge, come interstate?"[1] Although the calls were made between states, there can be no question that the sharing of "line information" [the betting odds on sporting events] may be probative of a violation of section 1955. *See United States v. Ceraso*, 467 F.2d 653, 655 (3d Cir. 1972); *United States v. Schaefer*, 510 F.2d 1307, 1311–12

---

* Senior District Judge of the Southern District of Texas, sitting by designation.

1. The transcript of the grand jury proceedings was not included in the record on this appeal. The trial court's single finding of fact bearing on the nature of the questions asked was that

"The Government attorney who questioned Mr. Aurillio, used information derived from the contents of the interstate telephone conversations to question Mr. Aurillio about receiving line information from Connecticut by use of interstate facilities."

(8th Cir.), *cert. denied*, 421 U.S. 978, 95 S.Ct. 1980, 44 L.Ed.2d 470 (1975).

■ After Aurillio's testimony failed to establish sufficient evidence of a violation of section 1955, the prosecutor decided to seek an indictment for violations of 18 U.S.C. §§ 1084 and 1952. Those statutes make it a federal offense to use interstate facilities to conduct a gambling operation.[2] Unlike section 1955, evidence of use of interstate facilities is an element of the offense under both section 1084 and 1952. *United States v. Brouillette*, 478 F.2d 1171, 1175 (5th Cir. 1973); *United States v. Gibson Specialty Co.*, 507 F.2d 446, 449 (9th Cir. 1974). Neither section 1084 nor section 1952 require a minimum number of participants in the offense. Thus, the evidence provided by the interstate conversations became relevant not for the purpose of showing the number of persons involved in the gambling operation, but to prove that the appellees used facilities in interstate commerce.

Since the offenses for which the Government then sought an indictment were arguably different from those specified in the original wiretap authorization order, the prosecutor sought an order pursuant to section 2517(5) permitting disclosure of the conversations. The trial court entered the disclosure order on May 13, 1975, after finding that the communications were intercepted in accordance with the provisions of Title III. On June 16, 1975—some two months after Aurillio first appeared before the grand jury—the interstate conversations were disclosed to the same grand jury, which returned the indictment in this case on the same day.

The case against appellees fell on the docket of a different federal judge, who granted defendants' motion to suppress the conversations at trial and dismissed the indictment for the government's failure to comply with section 2517(5) before Aurillio's appearance on April 18, 1975.[3] The Government argues that the trial court erred in concluding that a disclosure order was required under section 2517(5) for three reasons. First, it suggests that a disclosure order was not required because the interstate conversations related to the offense specified in the wiretap order. Second, the Government argues that section 2517(5) does not apply to grand jury proceedings. Finally, the government maintains that the use of intercepted communications to formulate general questions asked of a witness does not constitute "disclosure" of the com-

---

**2.** Section 1084, Title 18, U.S.C., provides in part:

 (a) Whoever being engaged in the business of betting or wagering knowingly uses a wire communication facility for the transmission in interstate or foreign commerce of bets or wagers or information assisting in the placing of bets or wagers on any sporting event or contest, or for the transmission of a wire communication which entitles the recipient to receive money or credit as a result of bets or wagers, or for information assisting in the placing of bets or wagers, shall be fined not more than $10,000 or imprisoned not more than two years, or both.

Section 1952 provides:

 (a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—

 (1) distribute the proceeds of any unlawful activity; or

 (2) commit any crime of violence to further any unlawful activity; or

 (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,

and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

 (b) As used in this section "unlawful activity" means (1) any business enterprise involving gambling . . . .

**3.** Appellees filed motions both to suppress the taped conversations at trial and to dismiss the indictment on the ground that the Government violated section 2517(5). The trial judge's order granted the motion to suppress and dismissed the indictment apparently as a result of the Government's statement that it would appeal the order suppressing the conversations and did not wish to proceed to trial at that time. The court did not expressly rule on the motion to dismiss. Inasmuch as we hold that the Government did not violate section 2517(5), we leave for another day whether suppression or dismissal of the indictment is the appropriate remedy for a violation of section 2517(5).

munications. We find merit to the Government's first argument, and do not reach the second and third points of error.[4]

Subsection (3) of section 2517 provides that wiretap evidence may be disclosed by any person authorized to receive it while giving testimony under oath in any proceeding held under the authority of the United States.[5] However, subsection (5) carves out an important exception to subsection (3) where an officer intercepts communications "relating to offenses other than those specified in the order of authorization . . ."[6] In those cases, the conversations may be disclosed only after a judge finds that the contents were intercepted in accordance with Title III. The purpose of section 2517(5) is reasonably clear.

The framers of Title III presumably intended by this requirement to prevent evasion of the several restrictions upon original applications (e.g., showing of probable cause, enumerated serious crime, ineffectiveness of other investiga-

tory techniques as to that offense). Otherwise, the applicant could easily name one crime while in fact he may have anticipated intercepting evidence of a different crime for which the prerequisites could not be satisfied. Such "subterfuge searches", in addition to their dissonance with Title III, would indeed run afoul of the Fourth Amendment. Without a judge's determination of inadvertence, Title III authorization might rapidly degenerate into what Justice Clark recently termed "the electronic equivalent . . . of a 'general search warrant.'" *United States v. Brodson,* 528 F.2d 214 (7th Cir. 1975).

*United States v. Marion,* 535 F.2d 697, 700–01 (2d Cir. 1976).

The courts that have interpreted section 2517(5) have held that the words "other offenses" refer to particular statutory violations different from those designated in the authorization order, rather than offenses constituting a different generic type of criminal activity.[7] In *United States v.*

4. Without passing on these issues, we note that other courts have taken a view different than the Government's. Section 2517(5) was applied to grand jury proceedings in both *United States v. Brodson,* 528 F.2d 214 (7th Cir. 1975) and *United States v. Marion,* 535 F.2d 697 (2d Cir. 1976). In *Marion,* the Second Circuit implicitly ruled that the use of intercepted conversations to question a witness constitutes a "disclosure" within the meaning of section 2517(5). *United States v. Marion, supra* at 703–04. In the following discussion, we assume arguendo that a "disclosure" was made.

We note also that appellees' motions to suppress questioned the validity of the government's original application for the wiretap, the court's authorization order, the government's application for a disclosure order, and the disclosure order itself. As the court below did not resolve these issues, and as they were neither argued nor briefed in this appeal, we leave them open upon remand.

5. Subsection (3), 18 U.S.C. § 2517, provides in terms:
 (3) Any person who has received, by any means authorized by this chapter, any information concerning a wire or oral communication, or evidence derived therefrom intercepted in accordance with the provisions of this chapter may disclose the contents of that communication or such derivative evidence while giving testimony under oath or affirmation in any proceeding held under the author-

ity of the United States or of any State or political subdivision thereof.

6. Subsection (5), 18 U.S.C. § 2517, provides in terms:
 (5) When an investigative or law enforcement officer, while engaged in intercepting wire or oral communications in the manner authorized herein, intercepts wire or oral communications relating to offenses other than those specified in the order of authorization or approval, the contents thereof, and evidence derived therefrom, may be disclosed or used as provided in subsections (1) and (2) of this section. Such contents and any evidence derived therefrom may be used under subsection (3) of this section when authorized or approved by a judge of competent jurisdiction where such judge finds on subsequent application that the contents were otherwise intercepted in accordance with the provisions of this chapter. Such application shall be made as soon as practicable.

7. Courts that have considered analogous issues under other wiretap statutes have intimated a different view. *See United States v. Grant,* 462 F.2d 28, 33 (2d Cir.), *cert. denied,* 409 U.S. 914, 93 S.Ct. 234, 34 L.Ed.2d 176 (1972) (New York statute); *United States v. Moore,* 168 U.S.App. D.C. 227, 513 F.2d 485, 502 n. 51 (1975) (District of Columbia statute). Cf. *United States v. Daly,* 535 F.2d 434, 440 n. 6 (8th Cir. 1976).

*Brodson*, 393 F.Supp. 621 (E.D.Wis.), *aff'd*, 528 F.2d 214 (7th Cir. 1975), on which the court below relied, the Government obtained an order authorizing electronic surveillance for the purpose of obtaining evidence of violations of section 1955. No authorization was obtained for surveillance as to a violation of section 1084. The "1955" wiretaps disclosed evidence of violations of section 1084 that the Government presented to a grand jury, which returned an indictment charging a violation of that statute. The court dismissed the indictment, ruling that section 2517(5) required the Government to obtain a disclosure order before the evidence was presented to the grand jury. In *United States v. Marion, supra*, the Government presented wiretap evidence to a grand jury that was obtained pursuant to a state court order authorizing interceptions to detect illegal possession of dangerous weapons. The intercepted conversations were used to question the defendant about possible violations of the federal statute concerned with the transportation of an unregistered firearm in interstate commerce, 18 U.S.C. § 922. Over a strong dissent, the Second Circuit reversed the defendant's conviction because the Government failed to secure section 2517(5) approval for the disclosure of conversations that related to offenses "other than those specified" in the state court's order.

The facts in both *Brodson* and *Marion* are clearly distinguishable from those involved in this appeal. Here, the Government presented the intercepted conversations to the grand jury in an effort to secure an indictment under sections 1084 and 1952 *after* a disclosure order was obtained. At the time that the witness Aurillio was brought before the grand jury the prosecutor was seeking an indictment under section 1955. The evidence adduced at the hearing on appellee's motion to suppress reflects that the Government was proceeding in good faith to secure an indictment solely under that section. This conclusion is strengthened by the fact that the prosecutor did not seek an indictment under sections 1084 and 1952 until some two months after Aurillio's appearance. Appellee has

emphasized that the testimony of the FBI agent in charge of the investigation reveals that the Government knew that the wiretap evidence standing alone was insufficient to support an indictment under section 1955 because it failed to show that the gambling business involved five or more persons. However, the record shows that the Government proceeded in the hope that Aurillio's testimony under his grant of immunity would suffice to fill that evidentiary gap. Thus, it appears that the fact the information presented also pertained to violations of section 1084 and 1952 was fortuitous. Only after Aurillio's testimony failed to show participation by the requisite number of persons and after a delay of two months, did the Government seek and obtain an order authorizing the disclosure of the intercepted conversations to establish violations of sections 1084 and 1952.

In seeking to determine the proper application of section 2517(5), we are convinced that the phrase "relating to offenses other than those specified in the order of authorization" cannot be mechanistically understood. If the term "relating" as used in subsection (5) was construed to include even hypothetical relationships, the exception embodied in subsection (5) would inevitably swallow up subsection (3). Evidence of any federal crime will more than likely "relate" in some way to another federal offense. Evidence of a violation of federal gambling statutes, for example, is often evidence of income tax evasion. A myriad of other examples might be gleaned from the pages of the federal criminal statutes.

 We believe that the term "relating" must be understood in terms of the protection that subsection (5) was intended to afford. The legislative intent, at least, is apparent. Congress wished to assure that the Government does not secure a wiretap authorization order to investigate one offense as a subterfuge to acquire evidence of a different offense for which the prerequisites to an authorization order are lacking. In light of that objective, the term "relating" is best understood in terms of how the intercepted conversation is used by the

Government and the Government's purpose in disclosing it. In this sense, it is difficult to perceive how section 2517(5) would be violated where the Government used intercepted conversations to secure an indictment solely under the very statute named in the authorization order, but where those same conversations also evidenced some element of a different offense for which an indictment was neither sought nor returned. We believe that when wiretap evidence is probative of both the offense named in the authorization order and some other unnamed offense, the relationship of the evidence to the unnamed offense becomes important in terms of 2517(5) only when the Government attempts to use it with respect to that offense. Here, the record negates any inference that the prosecutor sought to use the conversations in his questioning of Aurillio for any purpose other than to obtain an indictment for the offense specified in the authorization order. Thus, the disclosure was valid under section 2517(3) at the time that it was made. The fact that the Government subsequently obtained a disclosure order for the purpose of presenting evidence of the "other offenses" did not render the first disclosure retroactively illegal.

REVERSED AND REMANDED.