(592 P.2d 144)

No. 50,022

STATE OF KANSAS, *Appellant,* v. TERRY KUCHINSKY, CHET RUGG, HECTOR BRIBIESCA, FREDDIE GARCIA, KATHY CAHILL, TERRY PALMER, and MICHAEL CREED, *Appellees.*

Opinion filed March 23, 1979.

*Kiehl Rathbun,* assistant district attorney; *Vern Miller,* district attorney; and *Curt T. Schneider,* attorney general, for appellant.

*James S. Phillips, Jr.,* of Phillips and Phillips, of Wichita; *E. Lael Alkire,* of Alkire, Dwire and Wood, of Wichita; and *Mert Buckley,* of Adams, Jones, Robinson and Malone, Chartered, of Wichita; for appellees.

Before FOTH, C.J., ABBOTT and MEYER, JJ.

MEYER, J.: Defendants were charged with conspiracy to sell or deliver marijuana pursuant to K.S.A. 21-3302 and 1978 Supp. 65-4127b. In August of 1977, defendants moved to suppress certain recorded telephone conversations derived from court-ordered wiretaps, alleging the State had not complied with state

statutes regulating the use of electronic surveillance in criminal investigations and trials. On April 6, 1978, the trial court sustained defendants' motions to suppress on the ground that the State had failed to comply with K.S.A. 22-2515(6). The State filed this interlocutory appeal of that order.

Three court-ordered wiretaps were issued, dated November 22, 1976, December 11, 1976, and January 12, 1977. The orders of November 22 and December 11 related only to cocaine and/or heroin. The January 12 order was similar to the two previous orders except the January 12 order included the following language, "and other related but presently unknown drug distribution conspiracies . . . and the relationship of this cocaine distribution conspiracy to other illegal activities."

The actions against the various defendants were consolidated by the district court and further consolidated by this court, resulting in one appeal for the seven defendants. The motions to suppress filed by all these defendants involved the same series of wiretap orders, and for all practical purposes the issues relative to each of them are the same.

The State first argues that the suppressed conversations were within the scope of, or related to, the offenses specified in the December 11 order. As will hereinafter be discussed at greater length, the December 11, 1976, order cannot be said to be broad enough to encompass the suppressed conversations, nor were such conversations sufficiently related to the offenses specified in that order to withstand a motion to suppress.

The primary issue is whether the January 12, 1977, order which included the additional language set out above is broad enough to constitute judicial approval of the suppressed conversations.

K.S.A. 22-2515(6) provides:

"When an investigative or law enforcement officer, while engaged in intercepting wire or oral communications in the manner authorized by this act, intercepts wire or oral communications relating to offenses other than those specified in the order authorizing the interception of the wire or oral communication, the contents thereof and evidence derived therefrom may be disclosed or used as provided in subsections (2) and (3) of this section. Such contents and evidence derived therefrom may be used under subsection (4) of this section when authorized or approved by a judge of competent jurisdiction where such judge finds on subsequent application, made as soon as practicable, that the contents were otherwise intercepted in accordance with the provisions of this act, or with chapter 119 of title 18 of the United States code . . . ."

Because of the reference to "chapter 119 of title 18 of the United States code," we have also considered the federal statute found at 18 U.S.C. § 2517(5). Because K.S.A. 22-2515(6) is nearly a verbatim equivalent of 18 U.S.C. § 2517(5), we do not feel it necessary to set out the federal statute. Any reference in this discussion to the federal statute may also be taken as reference to its Kansas equivalent.

The defendants were charged with the marijuana offenses in March of 1977, based on evidence from conversations intercepted between the December 11, 1976, order and that of January 12, 1977. None of the wiretap orders specifically mentions "marijuana" or marijuana-related offenses. Although the affidavit presented to the court in support of the State's January 12, 1977, petition for surveillance included the substance of certain (already intercepted) conversations relative to the sale of marijuana, the order issued by the district judge on January 12, 1977, did not authorize the tap for marijuana prosecution purposes.

Specific attention is called to that portion of K.S.A. 22-2515(6) which provides that information relating to an "other" offense may be used as evidence of that offense "where such judge finds on subsequent application, *made as soon as practicable,* that the contents were otherwise intercepted in accordance with the provisions of this act . . . ." (Emphasis added.)

The defendants argued that the State had not complied with K.S.A. 22-2515(6) in that it sought to admit conversations relating to a conspiracy to sell marijuana when the December 11, 1976, and January 12, 1977, orders authorized interceptions of conversations relating only to cocaine and heroin transactions. The defendants further argued that no subsequent application seeking judicial ratification of the allegedly inadvertent interceptions (those relating to marijuana offenses) was ever filed by the State, as required by K.S.A. 22-2515(6). This failure, according to defendants, rendered the marijuana conversations inadmissible.

The State's principal argument is that the requirement of subsequent authorization by the court was satisfied by that part of the January 12, 1977, order which reads "other related but presently unknown drug distribution conspiracies . . . and the relationship of this cocaine distribution conspiracy to other illegal activities." The State contends that this language of an order subsequent to the conversations authorizes the use of evidence obtained relative to marijuana prosecutions.

The district judge suppressed all intercepted communications concerning marijuana between December 11, 1976, and January 12, 1977. He ruled that approval to use those conversations must have been obtained through a formal hearing and could not be implied from the January 12, 1977, extension order.

Had the defendants been charged with trafficking in cocaine or heroin, the marijuana-related conversations probably would have been admissible for the purpose of showing marijuana sales generated the funds for heroin and cocaine purchases. Here, however, the defendants were not charged with either cocaine or heroin trafficking or any other offense involving those specific drugs; they were charged with marijuana offenses. We think this distinction is highly relevant and determinative of the issues in this case.

The rationale behind the State's argument (that the suppressed conversations were covered by the December 11, 1976, authorization)· is that the marijuana buy-sell scheme was so closely related to the cocaine distribution operation that the two merged into one. The State argues that (1) either the marijuana sales were a necessary facet of the defendants' cocaine conspiracy; or (2) the offenses of selling cocaine and selling marijuana are so similar that the December 11, 1976, order authorized interception of conversations pertaining to either or both offenses.

Attention is invited to *United States v. Campagnuolo,* 556 F.2d 1209, 1215 (5th Cir. 1977), where the court states as follows:

"We believe that when wiretap evidence is probative of both the offense named in the authorization order and some other unnamed offense, *the relationship of the evidence to the unnamed offense becomes important in terms of 2517(5) only when the Government attempts to use it with respect to that offense.* Here, the record negates any inference that the prosecutor sought to use the conversations in his questioning of Aurillio for any purpose other than to obtain an indictment for the offense specified in the authorization order. Thus, the disclosure was valid under section 2517(3) at the time that it was made. The fact that the Government subsequently obtained a disclosure order for the purpose of presenting evidence of the 'other offenses' did not render the first disclosure retroactively illegal." (Emphasis added.)

*Campagnuolo* is thus consistent with the principle asserted in *United States v. Tortorello,* 480 F.2d 764 (2nd Cir.), *cert. denied,* 414 U.S. 866 (1973), and here asserted by the State that wiretap orders should be broad enough to permit authorized interception

of any statements which might establish a "specified pattern of crime." In *Campagnuolo*, a § 2517(5) "ratifying" authorization was not necessary as long as the government used the interstate conversations to establish the pattern of the crime with which the defendants were charged.

The State, in the instant case, could probably have introduced the marijuana conversations to establish an overall cocaine distribution scheme. The State could have applied for a subsequent disclosure order under K.S.A. 22-2515(6) to use the conversations in prosecuting defendants for violations of marijuana laws. The fact is that the State did not, after realizing there was insufficient evidence to convict defendants for violations of K.S.A. 1978 Supp. 65-4127a, apply for authorization to disclose the contents of the marijuana conversations in a prosecution under K.S.A. 1978 Supp. 65-4127b.

In *United States v. Brodson*, 528 F.2d 214 (7th Cir. 1975), the government had tapped defendant's phones pursuant to an order authorizing surveillance for evidence of violations of 18 U.S.C. § 1955. Brodson was subsequently charged with § 1084 violations, and evidence obtained from conversations intercepted under the "1955" authorization resulted in his being indicted for § 1084 offenses. Eight months later, the government applied under § 2517(5) to use the § 1955 conversations as evidence at trial of § 1084 violations. The trial court denied the request, finding it did not satisfy the § 2517(5) requirement of "as soon as practicable." The Seventh Circuit affirmed, stating that evidence secured under a § 1955 surveillance order could not be used in a § 1084 prosecution just because of similarity of the two offenses. The court said, at 528 F.2d 216:

"The Government says that it was not obliged to make the application under Section 2517(5) because the evidence secured under the Section 1955 order and authorization and used in that prosecution applied equally as well to the Section 1084 prosecution. This is of no consequence here because *the two offenses are wholly separate and distinct; they involve dissimilar elements* and *require different evidence, even though some of it might overlap because both concern illegal gambling. The controlling factor here, however, is not the dissimilarity of the offenses, but the fact that the Government itself has violated the key provision of the legislative scheme of Section 2515, in that it did not comply with the mandate of Section 2517(5)."* (Emphasis supplied.)

See also *United States v. Marion*, 535 F.2d 697 (2nd Cir. 1976). The cases discussed encompass the facts and arguments pre-

sented here. If a wiretap order authorizes interception of conversations pertaining to one particularly specified offense, any information obtained under that order may be used as evidence of only that specified offense. Even offenses that involve some mutual elements or require some of the same proof as the specified crime, are considered "other offenses" under the terms of K.S.A. 22-2515(6) [or 18 U.S.C. 2517(5)].

The State, by its brief on appeal, argues as follows:

"[I]t is important to note that subsequent approval is not required when offenses other than those specified in the order are intercepted. Only communications unrelated to offenses specified in the order must be the subject of subsequent judicial approval. If an offense is related to one named in the order authorizing interception, such approval need not be obtained."

The State has mismatched modifiers. In K.S.A. 22-2515(6), "relating" modifies "communications," not "offenses" (as the State suggests).

The State's use as supportive authority of U. S. Senate Report 1097 [S. Rep. No. 1097, 90th Cong., 2nd Sess., reprinted in (1968) U. S. CODE CONG. & AD. NEWS 2153] is not well taken. The report does make a limited analogy of the "plain view" doctrine to information of "other offenses" intercepted pursuant to a valid wiretap order. It also points out a significant difference: because court-authorized intrusion into private conversations is a much greater invasion of privacy than that allowed by a regular search warrant, K.S.A. 22-2515(6) [or 18 U.S.C. 2517(5)] imposes an additional requirement before any "plain view" conversations may be used as evidence of "other offenses." That is, a "subsequent" application must be made to the district court for such use "as soon as practicable." Here, the State not only did not make such application "as soon as practicable," but also failed to obtain *specific authorization* on January 12, 1977. It should be borne in mind that the defendants were not charged with the marijuana offense until over two months had elapsed since the last wiretap order was filed.

The State argues that *United States v. Tortorello,* 480 F.2d 764, is federal authority for its position in this case. Without setting out the facts of the *Tortorello* case, there are two important aspects of that case which distinguish it from the case at bar:

(1) The *Tortorello* court held that the original order was effectively and specifically amended to include the "new"

offense, because of the trial court's incorporation of the affidavit into the extension order; and

(2)  The court also noted that, because there was no state law specifically dealing with securities fraud, the offense was encompassed by the crime of grand larceny (one of the offenses specified in the original order). *Tortorello* at 782-783.

*Tortorello* does stand for the principle that the statutory "additional authorization" requirement may be satisfied by implementing the proper procedure in an application for renewal of an existing order. The judge, however, must be specifically notified of the different offense and of any intercepted conversations relating to it. The extension order should indicate in some fashion that the judge has been notified of "other offenses" and that the extension is intended to encompass the new offenses as well as those originally specified.

In the instant case, the affidavit given to acquire the January 12, 1977, order did refer to intercepted conversations relating to "elbows" or marijuana; and the district court's order of January 12, 1977, did repeat some of the language of the affidavit, although none of it related to the marijuana conversations.

It should be noted, however, that the judge who issued the January 12 order did not, expressly or implicitly, incorporate the "marijuana relating" provisions of the affidavit by reference. Nor did the State, either orally or in writing, request not only an extension but also an amendment of the December 11 order, to protect the "marijuana conversations" as evidence of *marijuana* offenses. The State did not clearly "notify" the issuing court of the inadvertent evidence, and the pertinent paragraphs of the January 12 affidavit are insufficient to inform a judge that the marijuana related conversations would be considered as evidence of anything but part of the cocaine scheme.

Compliance with the K.S.A. 22-2515(6) requirements imposed no great burden on the State. The point is simply that it failed to comply with the requirement and is therefore precluded from using the intercepted information as evidence in prosecuting these defendants for anything other than crimes involving cocaine or heroin.

The district court correctly suppressed the marijuana-related conversations.

Affirmed.