**UNITED STATES of America, Plaintiff,**

v.

**Joseph ARNOLD and Joseph Grieco, Defendants.**

**No. 83 CR 291.**

United States District Court, N.D. Illinois, E.D.

Nov. 30, 1983.

Dan K. Webb, U.S. Atty., Judith F. Dobkin, Sp. Atty., U.S. Dept. of Justice, Chicago, Ill., for plaintiff.

Morton L. Zaslavsky, Donald R. Harris and Gail A. Niemann of Jenner & Block, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

This matter is before the court on defendants' motion to suppress. For the rea-

sons hereinafter stated, defendants' motion is denied.

Defendants were indicted for violations of 18 U.S.C. §§ 371 & 1503, conspiring to corruptly influence, obstruct and impede the due administration of justice by corruptly instructing a grand jury witness to refuse to testify. The witness, Ralph Carazzo, asserted his fifth amendment right against self-incrimination after being ordered to testify by a federal district court pursuant to a grant of immunity. The defendants allegedly instructed Carazzo to refuse to testify to shield themselves from possible grand jury indictment.

The defendants' indictment rests upon various telephone conversations intercepted by means of a government wiretap. The defendants have moved to suppress any evidence of these intercepted communications at their upcoming trial, complaining that the government did not comply with the federal wiretapping statute, 18 U.S.C. § 2510–2520 (1970 & Supp.1983).

The federal wiretapping statute, Title III of the Omnibus Crime Control and Safe Streets Act of 1968, ("Act") is part of a comprehensive statutory scheme to combat organized crime activities. The wiretapping law has a dual purpose: 1) to protect the privacy of wire and oral communications and 2) delineate on a uniform basis the circumstances and conditions under which the interception of wire and oral communications may be authorized. S.Rep. No. 1097, 90th Cong., 2d Sess., reprinted in 1968 U.S.Code Cong. & Ad.News 2112, 2153. ("Senate Report 1097") One of the Act's key requirements is that wire and oral communications may be intercepted only in the investigation of specified serious crimes and only after application to a judge of competent jurisdiction, § 2516(1) & (2). The application must specify the offense for which evidence is sought. § 2518(1)(b)(i). Moreover, before authorizing a wiretap, the judge must determine that probable cause exists for believing that communications concerning the specified offense will be obtained, that other investigative procedures have been tried

and failed or reasonably seem unlikely to succeed. § 2518(3)(b) & (c). Finally, the order approving the interception must specify the offense for which evidence is sought. § 2518(4)(c).

Communications intercepted in accordance with these procedures may be disclosed and used in federal or state criminal and grand jury proceedings unless the communication "relat[es] to offenses other than those specified in the order of authorization or approval...." § 2517(5). In such instances, a subsequent application must be made to a judge who shall determine that the original wiretap authorization was lawfully obtained and that the communication was, in fact, incidentally or "otherwise intercepted" during the course of a lawfully executed order. Senate Report 1097 at 2189. Section 2517(5) further counsels that such a subsequent application "shall be made as soon as practicable."

To enforce compliance with its requirements, the Act also provides that intercepted communications cannot be used at trial or before a grand jury if such a disclosure would be in violation of the Act. § 2515. The Act further identifies the three circumstances that violate the Act and trigger suppression under § 2515:

(i) the communication was unlawfully intercepted;

(ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or

(iii) the interception was not made in conformity with the order of authorization or approval.

§ 2518(10)(a).

*Delay In Making A § 2517(5) Application*

[1] In the instant case, the defendants contend that the government did not make a § 2517(5) application "as soon as practicable", as required by that section and therefore the interception was unlawful and must be suppressed in accordance with § 2515. The government first requested wiretap authorization for the purpose of getting information relating to the crime of unlawful interference with commerce by

threats or violence in violation of 18 U.S.C. §§ 1951 & 371. This wiretap was authorized for a maximum period of 30 days on April 2, 1979. A second request for a wiretap authorization for the purpose of getting information relating to the crime of extortionate extensions of credit in violation of 18 U.S.C. §§ 892 & 894 was filed and granted on May 25, 1979. Defendants were not indicted for these crimes. Instead, in January, 1983, the government applied for a disclosure order pursuant to § 2517(5), relating to offenses of obstruction of justice, violations of Sections 1503, 1510, 1955 and 1962 of Title 18, United States Code. The order was granted. Defendants were subsequently indicted for violations of §§ 1503 & 371, obstruction of justice and conspiracy to obstruct justice.

In light of these facts, the defendants maintain that the government has failed to seek disclosure of otherwise intercepted communications "as soon as practicable" as required by § 2517(5). The defendants construe the quoted language as requiring that the government seek an order to use "otherwise intercepted" communications as soon as practicable after the interception has been made. Defendants point out that in the instant case the government did not seek an order until 31 months after the termination of the interception and that such a delay violates the Act and requires this court to suppress the intercepted communications. On the other hand, the government contends that "as soon as practicable" should be construed to be as soon as practicable before use in a proceeding, i.e., disclosure to a grand jury or at trial.

An examination of the cases construing the disputed provision, the legislative history of the wiretapping statute, and Supreme Court guidance describing the circumstances under which a motion to suppress intercepted communications should be granted, leads this court to conclude that suppression of the evidence is not warranted in the instant case. All courts construing § 2517(5) have recognized that the purpose of the section is to prevent evasion of the statutory restrictions upon the original wiretap application, i.e., probable cause, enumeration of serious crime, and the ineffectiveness of other law enforcement techniques. *United States v. Southard*, 700 F.2d 1, 31 (1st Cir.1983); *United States v. Campagnuolo*, 556 F.2d 1209, 1214–15 (5th Cir.1977); *United States v. Vento*, 533 F.2d 838, 855 (3d Cir.1976); *United States v. Brodson*, 528 F.2d 214, 215 (7th Cir. 1975); *see also United States v. Marion*, 535 F.2d 697, 707 (2d Cir.1976). As the Seventh Circuit explained in *Brodson*, the intent of Congress in enacting § 2517(5) was to "require that the Government submit the tape of its wiretaps to a neutral judge so that he might determine whether the interceptions were the inadvertent product of a legitimately obtained wiretap or the electronic equivalent of the type of illegal evidence formerly obtained under the supposed authorization of a 'general search warrant.'" *Brodson*, 528 F.2d at 215; *see* Senate Report 1097 at 2198. Moreover, in cases where the "as soon as practicable" language of the section was at issue, the court analyzed the language in terms of the section's overriding purpose.

For example, in *Brodson* the district court found that the "as soon as practicable" language was to be viewed in connection with the particular proceeding that happens to be imminent so that a court could evaluate the intercepted communication prior to its use before a grand jury or at trial. Because the government had presented "otherwise intercepted" communications to the grand jury prior to obtaining judicial approval, the Seventh Circuit affirmed the dismissal of the indictment. The good faith of the government's original wiretap application had simply not been tested prior to its use. *Brodson* did not, however, interpret the "as soon as practicable" language to impose a time limit upon the government measured from the date of the original interception.

In addition to the *Brodson* court, the court in *United States v. Southard*, 700 F.2d 1 (1st Cir.1983), also found that the length of delay between the original interception and the subsequent § 2517(5) appli-

cation was not controlling in determining the meaning of the "as soon as practicable" language of the section. In *Southard,* the original wiretap application was made and obtained on December 6, 1977. Communications were intercepted until December 22, 1977. On July 31, 1979, almost nineteen months after the original authorization, a § 2517(5) application was made in order to use the intercepted communications to show violations of offenses not specified in the original authorization. The following April 17, 1980, nine months after the order of approval and almost twenty-seven months after the original authorization, the grand jury indicted the defendants for offenses included in the § 2517(5) application. The defendants sought suppression of the intercepted evidence claiming that the delay constituted a violation of the "as soon as practicable" requirement of § 2517(5). The court rejected this argument and denied the defendants' motion to suppress.

Instead, the court looked primarily to the basic policy behind § 2517(5), protection against subterfuge searches. *Id.* at 30–31. The court found that the similarity of the offenses made subterfuge less likely since the statutory violations in the original wiretap authorization and the subsequent § 2517(5) disclosure application both involved gambling activities. The court also noted that the defendant had not alleged that the delay prejudiced him in any way. Moreover, unlike the facts in *Brodson,* judicial authorization to use otherwise intercepted communications for offenses not

specified in the original order had been obtained prior to disclosure to the grand jury. Against this background, the court refused to suppress the intercepted communications on statutory or constitutional grounds.[1]

In addition to cases interpreting § 2517(5), an examination of the Act's legislative history indicates that a strictly chronological interpretation that defendants urge is not a proper interpretation of the section. The legislative history indicates that the purpose of the section was not to impose strict time limits and disclosure burdens upon the government but to insure that the original wiretap order was lawfully obtained, in good faith and not as a subterfuge search, and that the communication was in fact incidentally intercepted during the course of a lawfully executed order. Senate Report 1097 at 2189.[2] To impose strictly chronological time limits upon the government would, in effect, force the government to disclose their manner and method of investigating the intercepted communications as well as their pending backlog or other investigations and activities. Such a burden would unduly hamper the government's investigation of organized crime or otherwise burden busy government staffs with recording and documenting everything done during every lengthy investigation for possible use in future court hearings. In view of the section's stated legislative purpose, Congress could not have intended to impose such burdens upon law enforcement officials. If the stated legislative purpose is

---

**1.** In *United States v. Marion,* 535 F.2d 697 (2d Cir.1976), the court did state that, if federal authorities are to use an intercepted communication in federal proceedings gained pursuant to a state authorized wiretap, "approval must be secured 'as soon as practicable' *after they learn (or should reasonably have learned) of the relevant contents of those communications." Id.* at 707. (emphasis added). However, the court went on to find that in all events the judge must make his finding, explicitly or otherwise, that the contents were otherwise intercepted in accordance with the provisions of Title III. This language does suggest that the "as soon as practicable" language of § 2517(5) means as soon as practicable after the interception, as the defendants contend and not as soon as practicable

prior to disclosure at a grand jury proceeding or trial, as the government contends. However, this language must be read in connection with the court's finding that in all events Title III was complied with. The unquestioned weight of authority indicates that such a finding may be made when the purposes behind Title III's statutory requirements are served.

**2.** This court has also examined the relevant Congressional debates on the statute and has found no indication that the "as soon as practicable" language was meant to impose any time limit upon the government in making a § 2517(5) application.

fulfilled, the government has done what it is required to do. Congress could not have intended to burden the government's law enforcement activities by requiring it to reveal and justify the manner and length of its investigations.

But even assuming that a thirty-one month delay is a violation of § 2517(5)'s "as soon as practicable" requirement, suppression of the evidence is not required under the circumstances of the instant case. In *United States v. Donovan*, 429 U.S. 413, 97 S.Ct. 658, 50 L.Ed.2d 652 (1977), the Supreme Court identified the circumstances wherein failure to comply with the Act's requirements rendered the interception "unlawful" and therefore suppressible. The Court found that only a violation of a requirement playing a "substantial role" in the Act's regulatory scheme rendered the interceptions unlawful and therefore suppressible. *Id.* at 433–435, 97 S.Ct. at 671. The Court held that suppression was required only where the government failed to satisfy a statutory requirement "directly and substantially implement[ing] the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device." *Id.* at 434, 97 S.Ct. at 671.

In light of the cases construing the "as soon as practicable" language of § 2517(5), the express Congressional intent behind the section and the Supreme Court's conclusion in *Donovan*, this court finds that the delay of thirty-one months in the instant case does not call for suppression of the intercepted communications. As in *Southard*, the purpose of § 2517(5) has been served. The government applied for and received an order from Judge McGarr finding that the otherwise intercepted communications relating to violations not speci-

fied in either of the original interception orders were intercepted incidentally and in good faith in the course of authorized interceptions. The two original wiretap authorizations sought to intercept communications relating to interference and conspiracy to interfere with commerce by threats or violence (18 U.S.C. §§ 1951 & 371) and extortionate extensions of credit (18 U.S.C. §§ 892 & 894). The additional disclosure application sought to intercept communications relating to obstruction of justice in violation of 18 U.S.C. §§ 1503, 1510, 1955 and 1962. Although the offenses specified in the two original wiretap authorizations and those specified in the § 2517(5) application are not as closely related as the gambling offenses in *Southard*, they are of a sufficiently similar nature to quell any doubts about subterfuge or good faith.[3]

Finally, while defendants in the instant case do allege that the delay "has prejudiced their ability to prepare their defense against the charge now brought against them," (Defendants' Motion to Suppress, ¶ 6) they fail to articulate how the delay has actually done so. In view of the fact that the statutory purpose of § 2517(5) has been served, a mere claim of prejudice does not warrant suppression of the evidence in the instant case. *United States v. Donovan*, 429 U.S. 413, 97 S.Ct. 658, 50 L.Ed.2d 652 (1977); *see Southard*, 700 F.2d 1, 30; *United States v. Vento*, 533 F.2d 838, 855 (3d Cir.1976).

## DEFECTS IN § 2517(5) APPLICATION

Although not initially presented in their motion to suppress, the defendants also challenge the use of otherwise intercepted communications disclosed pursuant to the government's § 2517(5) application. Defendants complain that the application did not request authorization to use the other-

---

**3.** An important purpose of Title III is to combat organized crime. Senate Report 1097 at 2157. Congress recognized that the activities of organized criminals were varied and that gambling, loan sharking and various forms of extortion were common activities of such people. *Id.* at 2158–59. This court's conclusion that the offenses specified in the two original applications

(interference and conspiracy to interfere with commerce by threats of violence and extortionate extensions of credit) and the offense specified in the § 2517(5) application (obstruction of justice, illegal gambling and racketeering) are similar is bolstered by such Congressional intent and Senate Report finding.

wise intercepted communications as evidence of a violation of 18 U.S.C. § 371, the conspiracy charge. Defendants also complain that the application lacks factual allegations, that monitoring of the wiretap was somehow hindered by the change of chief judges, who issue and monitor wiretapping authorizations in this district, and that the application failed to specify that the government intended to use the intercepted communications against defendant Grieco. The defendants' objections are considered seriatim.

■ The defendants claim that, because the § 2517(5) disclosure application did not specifically request authorization to use the otherwise intercepted communications as evidence of a violation of 18 U.S.C. § 371 (conspiracy to violate the underlying obstruction of justice charge), the motion to suppress should be granted.[4] Although no circuit court decision has specifically addressed such a claim under the same factual circumstances as the instant case, one district court did face the identical issue in *United States v. Aloi*, 449 F.Supp. 698, 717 (E.D.N.Y.1977). In *Aloi*, the government sought an authorization pursuant to § 2517(5) to use otherwise intercepted information as evidence of various federal offenses. The § 2517(5) application, however, did not request authorization to use the intercepted information in connection with a violation of 18 U.S.C. § 371. The intercepted information was presented to the grand jury and the defendants were indicted for violating 18 U.S.C. § 1952 (use of interstate commerce to commit bribery) and 18 U.S.C. § 371, the conspiracy charge. The defendants contended that because the § 2517(5) application did not mention 18

U.S.C. § 371, dismissal of the indictment or suppression of the evidence was the only proper course.

The *Aloi* court did not reach the issue of whether § 2517(5) had been violated, instead finding that even assuming a violation of § 2517(5), neither dismissal nor suppression was warranted under the circumstances of the case. The court concluded that the ultimate inquiry was whether the alleged violation of Title III subverted "Congressional intention to limit the use of interception procedures to those situations clearly calling for the employment of this extraordinary device." *United States v. Donovan*, 429 U.S. 413, 433–34, 97 S.Ct. 658, 671, 50 L.Ed.2d 652 (1977). Moreover, since the specific purpose of § 2517(5) was to guard against subterfuge searches, the facts surrounding any alleged violation of the section had to be examined to see if its purpose had been served. The court found that § 2517(5)'s purpose was served because a § 2517(5) application was made and a judge had determined that an inadvertent discovery of other illegal conduct had occurred. The court noted that in *United States v. Brodson*, 528 F.2d 214 (7th Cir. 1975) and *United States v. Marion*, 535 F.2d 697 (2d Cir.1976), cases where noncompliance with § 2517(5) resulted in dismissal of the indictments, no § 2517(5) applications were made and therefore no subsequent judicial evaluation of the propriety of the otherwise intercepted communications occurred. Without this subsequent evaluation by a judge, the good faith (lack of subterfuge) of the original application and the inadvertence of the otherwise inter-

---

4. Defendant also contends that one of the offenses charged in the indictment, 18 U.S.C. § 371, acts in furtherance of the conspiracy to obstruct justice, is not an offense for which a wiretap order may be obtained under the statute. An examination of the statute indicates defendant's contention is in error. Section 2516 provides that orders authorizing the interception of communications may be made only in the investigation of certain offenses, designated in sub-paragraphs (a) through (f) of the statute. The Senate Report indicates that "each offense has been chosen because it is intrinsically seri-

ous or because it is characteristic of the operations of organized crime." Senate Report 1097 at 2186. Subparagraph (c) designates offenses under 18 U.S.C..§ 1503 (influencing or injuring an officer, juror, or witness generally) as an offense for which a wiretap may be ordered. Finally, subparagraph (f) includes as a designated offense any conspiracy to commit any of the foregoing offenses. In addition, this court notes that the legislative history of Title III indicates that otherwise intercepted communications need not be offenses designated under the statute. Senate Report 1097 at 2189.

cepted communication could not be assured.[5]

However, in the instant case, as in *Aloi,* a § 2517(5) application was made and a subsequent judicial evaluation of the otherwise intercepted communications occurred. The court authorized disclosure of the otherwise intercepted communications and thus implicitly found that the original wiretap order was lawfully obtained, in good faith and not as a subterfuge. As the court noted in *Aloi,* "[r]eturning to a judge to get a further disclosure order for the Section 371 offense would have served no useful purpose and would have in no way furthered the goal of Title III." *Aloi,* 449 F.Supp. at 722–23. Therefore, the purposes of Title III were served and the motion to suppress cannot be granted for failure to specify the 18 U.S.C. § 371 violation in the § 2517(5) application. *United States v. Donovan,* 429 U.S. 413, 97 S.Ct. 658, 50 L.Ed.2d 652 (1977).

In addition, the defendants' other reasons for seeking dismissal are also without merit. The defendants complain that the § 2517(5) application lacks sufficient factual allegations to show that the otherwise intercepted communications were made in good faith. The application details the history of the wiretap and the fact that numerous communications were intercepted which indicated that the offenses of obstruction of justice, illegal gambling businesses and racketeering activities were occurring. In light of Congress' recognition that such offenses often go hand-in-hand, (see note 2, *supra* ), this court agrees that a finding of good faith was warranted. *See also United States v. Southard,* 700 F.2d 1, 28–29 (3d Cir.1983).

Moreover, the defendants' complaint that the change of chief judges who supervised the wiretap authorizations prejudiced them is also frivolous. The defendants have not demonstrated how the change of chief judges prejudiced them or interfered with the proper monitoring of the wiretaps. Absent more, a mere conclusory allegation that this change prejudiced them is an insufficient basis upon which to grant a motion to suppress. *See United States v. Donovan,* 429 U.S. 413, 97 S.Ct. 658, 50 L.Ed.2d 652 (1977); *United States v. Ianelli,* 477 F.2d 999 (3d Cir.1973), *aff'd,* 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1974). Defendants' claim that the application failed to specifically name defendant Grieco is similarly lacking in merit. The application specifically names five defendants and includes "others as yet unknown". Such information was sufficient to serve the purposes of § 2517(5) and does not require suppression of the intercepted communications. *Id.*

Therefore, the defendants' motion to suppress the intercepted communications is denied for the reasons stated in the foregoing opinion.

---

**5.** The court, although noting that the *Brodson* court stated that dismissal of an indictment was the ultimate sanction for the government's failure to act properly, *Brodson* did not hold that dismissal of an indictment was the *only* appropriate remedy. The *Aloi* court found that the cases cited in support of the *Brodson* dismissal showed that such a remedy was addressed to the discretion of the trial court. Reviewing various Supreme Court decisions discussing exclusionary sanctions, the court concluded that the remedy for an illegal wiretap did not extend to barring prosecution altogether. *See also United States v. Harvey,* 560 F.Supp. 1040, 1063 (S.D.Fla.1982).

The *Aloi* court also found that the legislative history of the Act lent support to its conclusion that dismissal of an indictment is not the exclusive or mandatory remedy for a violation of § 2715(5). 449 F.Supp. at 720–21. The court pointed to the Supreme Court's instructive comments on the legislative intent behind Title III: [not] every failure to comply fully with any requirement provided in Title III would render the interception of wire or oral communications 'unlawful.' [*United States v. Giordano,* 416 U.S. 505 at 524–27, 94 S.Ct. 1820 at 1831–32, 40 L.Ed.2d 341 (1977) ] To the contrary, suppression is required only for a 'failure to satisfy any of those statutory requirements that directly and substantially implement the Congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device. [Brackets added] (quoting *United States v. Donovan,* 429 U.S. 413, 433–34 [97 S.Ct. 658, 671, 50 L.Ed.2d 652] (1977)). *Id.* at 721.